UNITED STATES, Appellee

v.

DONALD G. PAVONI, Private First Class,
U. S. Marine Corps, Appellant

5 USCMA 591, 18 CMR 215

No. 5660

Decided April 8, 1955

CAPT Rufino R. Saez, USMCR, for Appellant.
CDR Raymond W. Glasgow, USN, and CDR Gay E. Millius, Jr., USNR, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This is a typical special court-martial case tried by counsel who were not lawyers. As a result, much immaterial and incompetent evidence found its way into the record. The justiciable issue arises out of the following facts and circumstances. The petitioner was charged and convicted jointly with two associates of the wrongful appropriation of a motor vehicle and the attempted larceny of its motor, in violation of Articles 121 and 80, Uniform Code of Military Justice, 50 USC §§ 715 and 674, respectively. All three were sentenced to receive a bad-conduct discharge, to be confined at hard labor for six months, and to be reduced to the grade of private. The convening authority disapproved the findings of guilt on the second charge and its specification, and reduced the sentences to a bad-conduct discharge, reduction to the grade of private, and confinement at hard labor for three months. The officer exercising general court-martial jurisdiction disapproved the findings and sentence as it pertained to one of the accused, but approved both the findings and the sentence imposed upon the two remaining offenders. The board of review in the office of The Judge Advocate General of the Navy affirmed, and this petition was granted on the issue of whether the petitioner, Pavoni, was prejudiced by the admission of evidence regarding previous offenses.

Briefly, the facts show that on March 26, 1954, Mrs. Dawson M. Beale, the owner of a 1953 Mercury sedan, parked it on the street in the residential section of San Mateo, California, while she was visiting with friends. She locked the car upon leaving it, but when she returned her car was missing. A search was instituted without avail, and eventually she reported the loss to the police. Meanwhile, a reserve deputy of the San Mateo County Sheriff's office observed the car standing some distance from its original parking place. At that time the three accused, Pavoni, Herman, and Harris, were near the car and its hood was up. Not suspecting that anything unlawful had occurred, but believing he might offer some assistance to the men who appeared to be working on the car, the officer approached and asked what was wrong. Because of certain answers to some of his questions, and when no one could produce the keys to the automobile, he became suspicious. After displaying some uneasiness, the members of the threesome suddenly fled the scene of activity. Pavoni and Herman left on foot, while Harris drove off in another car which was parked nearby. The officer pursued the latter, appre-

hended him, and accompanied him to the police station. Later Pavoni and Herman appeared at the station and surrendered to the police. Each of the three thereupon voluntarily made full confessions of guilt of the offenses, and the written statements were admitted into evidence over a defense objection based only on the grounds of failure to warn. The petitioner's confession contained an admission of his convictions for the commission of several crimes in civilian life, and some were again mentioned in the statement signed by Harris. The questionable portion of the former's statement is as follows:

"Q. Donald, what other crimes have you committed during your life?

A. As a juvenile, I was convicted of stealing a motor scooter, then also of the Dyer Act. that was in Georgia, the other was in Chicago, also Burglary, carrying a gun, and that is all."

Harris' statement, which merely confirms part of the petitioner's admissions, contains the following:

"Q. Did Pavoni say anything about having committed any crimes in the past?

A. Yes sir.

"Q. What did he say he had done?

A. In Chicago, he had swiped some cars, I don't know what else."

In addition, a police report made by the San Mateo, California, Police Department, which contained an item showing the same offenses, was received in evidence as a prosecution exhibit.

Generally, it is contended by appellate defense counsel that it is prejudicial error to admit evidence of the commission of previous offenses to show that the present act was probably committed by the accused. Wigmore, Evidence, 3d ed, § 192, states the rule as follows:

"*Nature of the Inference; an Act is not evidential of another Act.* At the outset of this entire prospectant class of inferences, it must be noted that, where the doing of an act is the proposition to be proved, there can never be a direct inference from an act of former conduct to the act charged; there must always be a double step of inference of some sort, a 'tertium quid.' In other words, it cannot be argued; 'Because A did an act X last year, therefore he probably did the act X as now charged.' Human action being infinitely varied, there is no adequate probative connection between the two. A may do the act once, and may never do it again; and not only may he not do it again, but it is in no degree probable that he will do it again. The conceivable contingencies that may intervene are too numerous.

•    •    •    •    •    •    •

"This principle has long been accepted in our law. That 'the doing of one act is in itself no evidence that the same or a like act was again done by the same person', has been so often judicially repeated that it is a commonplace."

A similar rule has been adopted by the military. The Manual for Courts-Martial, United States, 1951, paragraph 138*g,* provides as follows:

"The general rule is that evidence that the accused has committed other offenses or acts of misconduct is not admissible as tending to prove his guilt, for ordinarily such evidence would be useful only for the purpose of raising an inference that the accused has a disposition to do acts of the kind committed or criminal acts in general and, if the disposition thus inferred was to be made the basis for an inference that he did the act charged, the rule forbidding the drawing of an inference of guilt from evidence of the bad moral character of the accused would apply."

There are a good many exceptions to the rule excluding evidence of prior offenses by an accused, and we have had occasion in prior cases to delineate some of these exceptional areas. In other fields civilian cases have discussed the variations. Thus, evidence of an offense not charged is admissible when it tends to identify the accused as the perpetrator of the act with which he is charged, United States v. Marshall, 2 USCMA 54, 57, 6 CMR 54, 57; when it shows guilty knowledge, intent, or a course of criminal conduct, United

States v. Jones, 2 USCMA 80, 6 CMR 80; United States v. Deller, 3 USCMA 409, 419, 12 CMR 165; United States v. O'Neil, 3 USCMA 416, 417, 12 CMR 172; when it shows a plan or design of the accused, United States v. Hunter, 2 USCMA 37, 43, 6 CMR 37, 43; when it shows motive, United States v. Marshall, supra; when it is interwoven with the offense charged, United States v. Marshall, supra; Johnston v. United States, 22 F2d 1, 5 (CA DC Cir 1927), cert den 276 US 637, 72 L ed 745, 48 S Ct 421; and when it tends to rebut a claim by the accused that his participation in the offense was the result of accident or mistake. Manual for Courts-Martial, supra, paragraph 138*g*, page 244. Furthermore, there is overwhelming Federal authority to support the proposition that "evidence which incidentally reveals the commission of a crime other than the one named in the indictment may . . . be received if it tends to . . . rebut an issue raised by the defense." Bracey v. United States, 142 F2d 85, 90 (CA DC Cir 1944), cert den 322 US 762, 88 L ed 1589, 64 S Ct 1274; Behrle v. United States, 100 F2d 714, 715 (CA DC Cir 1938), and our adherence to this exception in an appropriate case has been foreshadowed. United States v. Brumfield, 4 USCMA 404, 408, 15 CMR 404, 408.

All of these exceptions to the general rule of exclusion may be covered by stating the rule in the negative; that is, relevant and competent evidence of guilt is not rendered inadmissible because it also proves that the accused committed another offense. United States v. Haimson, 5 USCMA 208, 17 CMR 208; Coulston v. United States, 51 F2d 178, 181 (CA 10th Cir 1931).

In the present case none of the exceptions set forth above is applicable. The identity of the petitioner as one of the three participants in the incident was not disputed. He surrendered himself at the police station, fully admitted his part in the offenses charged, and was identified by the officer who took the statement. There is no substance to a contention that the previous convictions enumerated in the petitioner's statement tended to show guilty knowledge, intent, plan, motive, or anything akin to those mental states. Furthermore, it would be absurd to argue that these prior offenses were interwoven with the acts charged here, for those offenses are too remote and occurred a considerable time before this offense was committed. Finally, evidence of prior offenses was not made relevant by testimony of the petitioner at trial. Stated in summation, this evidence of other offenses was not material, relevant, or competent evidence as to any of the issues at this trial. We conclude that the evidence questioned here was inadmissible.

Because the issue here involves only the admission of incompetent evidence, we look to the nature and weight of the competent evidence of guilt to determine the impact of the error. In assessing the prejudice, we are forced to conclude that the record in this case affirmatively establishes that the inadmissible testimony could have had no measurable effect on any member of the court-martial. Of course, the presumption of innocence followed the accused through all phases of the trial, but it was so effectively destroyed by the prosecution evidence that no reasonable person could have returned any finding other than one of guilt. Contrary to some recent cases, no question of the petitioner's credibility was involved because he never occupied the role as a witness on the merits or on any interlocutory question. There was no dispute in the testimony; no uncertain or vacillating witnesses; and there was a full and complete confession by the petitioner corroborated on all principal details. No issue was raised concerning its voluntariness, nor was there the slightest suggestion that the civilian officers prompted petitioner to admit his complicity in, or connection with, the crime. He voluntarily appeared at the police station and made a clean breast of his participation. His statement of his previous troubles was only an incidental part of the confession, and his previous record of criminal offenses was not commented upon in arguments on the merits, or on any motion.

594

Conceding the confession was read to the court, the impact must be measured in the light of the allegations, facts, and findings. The charges were "misappropriation" and "attempted larceny." The latter was set aside solely because the president neglected to instruct on larceny, but that was a fortunate happenstance for the petitioner. The undisputed evidence aliunde the confession shows the following state of facts: The victim's car was moved without her consent; the window was broken; three persons were working on it with the hood in a raised position; they were in possession of tools usable for removing an engine, including a hoist; gloves were worn by the group; three persons fled when questioned about the keys; one was apprehended and two later voluntarily surrendered; each made a separate confession and the details of the plan, its execution, and the crime set out in them are strikingly similar; and each offender made his statement after being warned by the civilian police that anything he stated could be used against him.

With that body of evidence as a starter, we now add the testimony found in the accused's statement which is unchallenged for truthfulness: He relates, in substance, the following sequence of events; That he desired to obtain a motor for his car; that he, accompanied by Harris and Herman, left the Marine Base at about 4:00 p.m. in his car; the three participants planned to steal a motor to replace the one in his 1950 Ford convertible; they obtained the necessary tools, hoist, chain, and flashlight; the chain, flashlight, and gloves were purchased in San Francisco and the rest of the equipment was obtained at his house; the gloves were to prevent fingerprint marks from being left on the car; they noticed an acceptable automobile in front of an apartment building on a street west of El Camino in San Mateo; he then changed clothes, broke the window with a rachet handle, and released the brake; he and Herman pushed the car away from its parking place; and he was attempting to wire around the switch when the officer arrived. He goes on to state that when the officer became suspicious he fled; he concealed himself and watched the officer chase Harris; when the latter was apprehended and taken to the station, he concluded to give himself up; that the plan to steal the car was his own idea; and part of the equipment was turned over to the police officials.

To support our conclusion of no prejudice, we merely state that the evidence of guilt is so compelling that no reasonable member of the court would be influenced by the incompetent evidence of juvenile delinquency. It was such an unimportant circumstance in this mass of incriminating facts as to go unnoticed.

One or two other matters bear mentioning. There was no objection running to the questioned testimony and it must have escaped the attention of counsel. Moreover, it is not contended that trial counsel deliberately attempted to influence the court-martial members against the accused; and the record shows that the objectionable portion of the confessions was not once mentioned by any participant at trial after the confessions were read into the record. Of course, it follows that an accused may, in some cases, be harmed just as much by a prosecutor's ineptness as by deliberate misconduct on the part of that functionary. But where, as here, the accused is not deliberately overreached, and he has suffered no prejudice from an error unnoticed at the trial level, we are not inclined to reverse his conviction and sentence. Particularly is that true when his penalty is much less than that ordinarily imposed in similar cases.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

Inadmissible evidence may prejudice an accused in regard to the sentence, even though there is no ▮▮▮ fair risk that it improperly influenced the findings of guilty. United States v. Fleming, 3 USCMA 461, 13 CMR 17. I agree with the majority that the accused was not harmed in connection with the findings, but I disagree with the majority's fail-

ure to consider the effect of the inadmissible evidence on the sentence. True, the sentence adjudged by the court was modest for the offense for which the accused was convicted, but it is significant that it was the maximum the court could impose. See: United States v. Zimmerman, 1 USCMA 160, 163, 2 CMR 66. The convening authority reduced the sentence, but his action was based upon other considerations.

Accordingly, I would affirm the findings of guilty, but return the case to a board of review for determination of an appropriate sentence, in the light of our opinion. United States v. Lowe, 4 USCMA 654, 16 CMR 228; United States v. Redenius, 4 USCMA 161, 15 CMR 161.