UNITED STATES, Appellee,

v

LONNIE C. HOY, Private, U. S. Army, Appellant

12 USCMA 554, 31 CMR 140

*Captain Samuel J. Rozel* argued the cause for Appellant, Accused. With him on the brief were *Colonel W. H. Blackmarr* and *First Lieutenant Talbot J. Nicholas.*

*First Lieutenant Peter McGinn* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *First Lieutenant Francis J. Larkin.*

## Opinion

KILDAY, Judge:

### I

Upon his trial by general court-martial, accused pleaded not guilty but was convicted of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922. The convening authority approved the findings and so much of the adjudged sentence as extended to dishonorable discharge, total forfeitures, and confinement at hard labor for nine months, and a board of review in the office of The Judge Advocate General of the Army affirmed. Thereafter, by order of the Secretary of the Army, the character of accused's punitive separation was mitigated to a bad-conduct discharge. In the meanwhile, accused had sought review by this Court, and subsequently we granted his petition to consider arguments on two issues pertaining to the admissibility of certain evidence and the necessity for limiting instructions thereon.

### II

Although minor details are somewhat unclear, the essential facts are not in dispute. They show that on the night in question, shortly after 9:00 p.m., the victim—one Private Feirn— was crossing a deserted field at Fort Sill, Oklahoma. Three men—one of them the accused Hoy, the others Privates Carpenter and Campbell— were standing at one side of the field. As the victim started across it, they dispersed as if parting for the evening and going their several ways. One approached him in the middle of the field, asking for a cigarette. After the victim complied, he was attacked. He broke away, however, and when another of the trio came rushing at him from another direction, Feirn fled from that pair in an effort to escape from his predicament. He had run some fifty yards when he saw the third man running directly toward him from yet another direction. That individual, it is conceded, was the accused and, to avoid him, the victim reversed his field. By so doing Feirn moved into the hands of Carpenter and Campbell, his two previous assailants, who were in hot pursuit. They caught him and and forcibly relieved him of his wallet. As they did so, accused moved up to within five or ten feet of the robbery scene and behind the victim, from which point he witnessed the activity. Thereafter, Feirn was released and the three men ran off together into the darkness.

Accused disputed none of the above facts and, at trial, admitted his presence at the scene. He denied, however, that he and his two companions had planned to rob or assault anyone. Neither, he claimed, was he aware his cohorts intended to rob the victim when he parted from them at the edge of the field. Further, accused denied having participated in the assault or robbery in any way, or having shared in the proceeds. He ascribed his presence on the immediate scene to mere curiosity. Accused claimed that when he saw the struggle he ran into the field and toward the fracas simply "to see what it

was all about," for he "figured they were fighting."

Carpenter was a member of the same unit as accused; Campbell was assigned to a different battery. The former testified as a witness in accused's behalf. He admitted he was the man who first accosted and assaulted Feirn, but he corroborated accused's protestations of innocence. Carpenter denied Hoy had participated in the robbery in any way, or acted as lookout or to assist in "corralling" the victim. Further, Carpenter said there was no plan among the three and that Hoy did not know, at the time Feirn was attacked, the latter would be robbed. To the contrary, Carpenter averred he was the responsible party, stating that he "had some kind of a funny feeling" and that as Feirn came across the field he said to his companions " 'Here comes one.' " The witness says he did not know what Campbell and Hoy would take that statement to mean, but he thereupon walked up and intercepted the victim, then assaulted him. And although he acknowledged accused later approached to within a few feet, Carpenter emphatically denied that Hoy took part or in any way "bothered" the victim.

In an admittedly voluntary pretrial statement accused had made essentially the same assertions he did in his testimony on the merits. In addition, that extrajudicial statement contained the admission that accused had, about an hour earlier on the evening in question and while in the company of Carpenter, assaulted a different individual in the same area, knocked him down, and then fled with his companion. The portion of accused's pretrial statement relating to this separate altercation was admitted into evidence by the law officer over objection by the defense. His action in doing so forms the basis for the first issue.

### III

We are urged to hold that the law officer erred by admitting evidence of prior acts of misconduct, on the basis they were of no value in proving the robbery. Once again we are confronted with a question involving an area of

556

law in which we have laid out substantial guideposts. The general rule in both the civilian community and at military law is, of course, that ▮▮▮▮▮▮ evidence of other offenses or acts of misconduct not charged is inadmissible where its only relevance is to show the accused to be a "bad man" with criminal dispositions or propensities. Manual for Courts-Martial, United States, 1951, paragraph 138g. See also United States v Pavoni, 5 USCMA 591, 18 CMR 215, and authorities therein collated. However, the ordinary rule of exclusion is subject to a number of exceptions and, as we pointed out in Pavoni, "relevant and competent evidence of guilt is not rendered inadmissible because it also proves that the accused committed another offense." 5 USCMA at page 594. The parties are not in disagreement regarding the above principle. Rather, this issue turns on its application under the facts of the instant case.

It is uncontroverted that accused, himself, did not relieve Feirn of his wallet; his guilt must turn on whether he was an aider and abettor in the robbery. The issue was clearly joined on that critical question, and the defense position was that accused was but a mere spectator, innocently drawn to the scene in the middle of the field by curiosity, who had no knowledge of criminal intent on the part of the others and who took no part in the robbery. Both the testimony at trial and accused's pretrial statement were relied upon by the defense in support of this contention. Indeed, the extrajudicial statement alone would put that theory in issue, for it is settled ▮▮▮▮▮▮ law that exculpatory portions of an accused's pretrial statement may themselves suffice to raise an issue. United States v Johnson, 3 USCMA 209, 11 CMR 209.

On the other hand, the evidence fairly permits the conclusion that accused and his two cohorts accomplished a triangular envelopment of their victim and, when the latter sought to make good his escape from the two strangers who initially set upon him, that accused purposefully cut off Feirn's escape route to safety and facilitated his cap-

ture by Carpenter and Campbell. See United States v Patterson, 7 USCMA 9, 21 CMR 135. Thereafter, the court-martial could find accused stood by in the immediate vicinity as lookout or to block any further possible escape by the victim while his partners completed the crime, then fled with them.

With the evidence in that posture, we are constrained to hold the law officer ■ did not err in admitting that portion of accused's extrajudicial admission concerning the previous altercation. Manifestly Feirn was robbed; this fact the defense conceded. The only substantial issue before the court-martial was whether accused Hoy was a party to the crime of his companions, and the questioned evidence sheds considerable light on it. The record, considered in its entirety, shows that accused and his two cohorts were, on the evening in question, bent on an excursion of violence toward such persons as they might happen upon in the area. The evidence in question shows Carpenter and accused—but a short hour before the crime for which accused was convicted and near its scene—fled together after the latter had set upon another unsuspecting individual and rendered him *hors de combat.* And other factors such as Carpenter's exclamation " 'Here comes one," upon sighting the victim of the instant crime in the deserted field, point in the direction of a continued course of such conduct. While the witness implied his companions did not understand what that cryptic statement meant, it might possibly suggest he was alerting them to the presence of another common victim. So, too, does the fact that the trio—only two of whom were from the same battery—dispersed in different directions and accomplished Feirn's envelopment when they separated at the edge of the field before he was assaulted, yet fled in a single group after the robbery was completed. Significantly, accused had asserted he was headed back to his billet when he separated from his associates at the edge of the field. Thus, the previous altercation was but a single faggot in a bundle of incriminating circumstances upon which the triers of

fact could properly rely. Although Hoy's identity as the man who rushed at Feirn and thereby effectuated his capture—whether purposefully or no—is not disputed, the sum of the evidence is probative of a pattern of similar criminal association and conduct among the trio and particularly between Carpenter and accused on the night of the robbery, and thus serves to fix the latter's participation in that crime as an aider and abettor. In that fashion it may be considered to put the lie to accused's contention—both in the exculpatory portion of his out-of-court statement and at trial— that curiosity drew him to the scene of the robbery as a spectator, whereby he innocently turned Feirn back into the hands of his assailants as the result of misadventure. Hence, it is clear the evidence was admissible as an exception to the ordinary rule of exclusion. United States v Pavoni, supra, and cases therein cited.

## IV

That brings us to the final issue, for it is contended the law officer did not advise the court members on the limited purpose of the evidence of the earlier assault. Defense counsel did not request any such limiting instruction at trial, but appellant urges here that the law officer was obliged to give such a charge on his own initiative and that his failure to do so requires reversal.

As I view the law in this area, there can be no question, as has been observed, that "it is desirable ■ to inform the court specifically that . . . [such evidence] has limited use." United States v Sellers, 12 USCMA 262, 273, 30 CMR 262. Indeed, under certain circumstances this Court has held, as appellate defense counsel point out, that such cautionary advice must be given, *sua sponte,* to the triers of fact. United States v Bryant, 12 USCMA 111, 30 CMR 111. Manifestly, however, that is not a rule of absolute and undeviating application. United States v Sellers, supra, at page 272; United States v Haimson, 5 USCMA 208, 231, 17 CMR 208.

In the case at bar, it is to be borne in mind that the defense was well aware the evidence was admissible, if at all, only as an exception to the general rule of exclusion and for a limited purpose. Defense counsel had vigorously objected that the evidence did not fall within such exceptions. Nonetheless, although the defense proffered six other requested instructions to the law officer, it did not ask for cautionary advice on this point. And, as a matter of interest, defense counsel, in his argument on the merits, in effect importuned the court members not to consider the evidence of the prior altercation in any fashion. With the facts in that posture and, there having been no request therefor, I conclude the law officer was not required, *sua sponte*, to give the limiting instruction. United States v Sellers, supra; United States v Haimson, supra.

The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring in the result):

In United States v Bryant, 12 USCMA 111, 30 CMR 111, we reviewed a number of cases dealing with the obligation to instruct on the limited purpose for which evidence of other offenses is admitted. We concluded that the "better rule is that the instruction is a necessary concomitant of such evidence." Supra, page 115. I adhere to that holding. In my opinion, the law officer here sufficiently instructed the court-martial to consider the evidence of the earlier assault only if it tended to establish the accused's complicity in the offense charged, and not merely to infer his guilt of that offense because he had committed another and different wrong at a previous time. Thus he said:

". . . The evidence, as I recall it, is that the accused and one other earlier in the evening had gone out. The accused had had a fight with someone and then the accused had returned to his quarters. Later one of the witnesses testified, he went back to the quarters of the accused and again enticed him to come along with him and then that they picked up the third person . . . *they walked along the field* . . . [and] *Feirn was assaulted or attacked, and $2.00 was taken from him.* You will have to determine whether the accused participated as an aider or abettor or whether there was any concert of purpose given this act prior to the time that the three participants, or the three were at the scene of it. If there is concert of purpose to do a given act, and such act is done by one of the parties, all probable results that could be expected from the act are chargeable to all the parties concerned, but in order to make one liable as principal in such a case, the offense committed must be embraced by the common venture, or it must be an offense likely to result as a natural and probable consequence of the offense directly intended. *Now it wouldn't be directly intended if the accused and those accompanying him went out only for the purpose of fighting. It wouldn't be directly intended that they would rob also.*"

If the accused wanted further amplification of the limited effect of the evidence he should have requested it. I, therefore, join in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

While I agree with my brothers that the evidence of accused's earlier participation in another joint assault upon a different victim was admissible, under the circumstances of this case, to establish his connection with the charged offense, I cannot join in their conclusion that the law officer either was not required *sua sponte* to instruct upon the limited purpose for which it was received, or did, in effect, so advise the court members.

The facts have been ably set forth by Judge Kilday, and he has called attention to the decisions of this Court which are relevant to the controversy before us. In my opinion, these precedents are in irreconcilable conflict, and an at-

tempt to bring them in line and support the Court's present holding merely adds to the confusion which is rampant in this area. It seems to me that the administration of military justice would be better served by the adoption of a hard and fast principle and adherence to it. In connection with evidence of prior misconduct, our proper position should, in my view, be a requirement that *sua sponte* limiting instructions accompany its receipt.

Our decision in United States v Haimson, 5 USCMA 208, 17 CMR 208, is to the contrary. There, we said, at page 231:

"The only instruction to which the accused was entitled would have been one to the effect that the members of the court might not permissibly consider the evidence of specific misconduct as showing an evil disposition, or criminal propensity, on the accused's part, and from the fact of that disposition infer that he had committed the offenses alleged. Such an instruction would certainly have been appropriate. *But the law officer—we are equally sure—was under no duty sua sponte to charge the court regarding this aspect of evidence. The burden of requesting such an instruction rested on defense counsel.* Cf. United States v Johnson, 3 USCMA 709, 14 CMR 127; United States v Schumacher, 2 USCMA 134, 7 CMR 10." [Emphasis partially supplied.]

We nonetheless re-examined the precise problem in United States v Bryant, 12 USCMA 111, 30 CMR 111. There, after consideration of the holding in Haimson, supra, we said, at page 115:

"Some cases in the Federal courts indicate that, absent a defense request, it is not prejudicial error to fail to give an instruction on the limited purpose for which evidence of offenses other than those charged is admitted. See Breese v United States, 203 Fed 824 (CA 4th Cir) (1913). *In our opinion, however, the better rule is that the instruction is a necessary concomitant of such evidence. The Court of Appeals for the*

*Fifth Circuit has pointed out that 'requisite caution' in the use of such evidence includes an instruction on the special purpose for which it is admitted.* Ahrens v United States, 265 F 2d 514, 516 (1959); see also Martin v United States, 127 F 2d 865 (CA DC Cir) (1942), concurring opinion by Judge Stephens." [Emphasis supplied.]

We again considered the issue some three months after United States v Bryant, supra, was decided. In United States v Sellers, 12 USCMA 262, 30 CMR 262, we were confronted with the introduction of evidence that the accused gambled heavily and had written bad checks. The law officer did not inform the court members of the limited purpose for which this evidence of other misconduct was received. While some attempt was made by Judge Latimer to base the Court's decision on an alternative ground, it was flatly declared that no *sua sponte* limiting instruction was required. Thus, my brothers, over my dissent, stated at page 272:

". . . It is asserted, however, that . . . the law officer erred in failing to give a limiting instruction requested by the defense at trial. We are unable to subscribe to that view. *In the first place there was no request for a limiting instruction on the check evidence and under our view of the law the law officer was not required to instruct thereon of his own accord. United States v Haimson, 5 USCMA 208, 17 CMR 208.*" [Emphasis supplied.]

It is apparent to me that our decisions in United States v Haimson and United States v Sellers, both supra, on the one hand, and in United States v Bryant, supra, on the other, are diametrically opposed. It has been suggested by the Government that the *Bryant* decision is limited to special courts-martial, the type of tribunal there involved. We have, however, always refused to draw any such distinction, and I do not understand that my brothers here attempt so to circumscribe the rule. See United States v Pinkston, 6 USCMA 700, 21 CMR 22.

559

Rather, the principle is characterized as "not . . . of absolute and undeviating application," and exception is created on the basis that the defense counsel here objected to the admissibility of the evidence and argued to the court members that it should not be considered for any purpose. Chief Judge Quinn concludes that an effective instruction was given.

Logically, it would seem that the defense counsel's position more strongly supports invocation of the requirement for a *sua sponte* instruction than an *ad hoc* exception to that rule. It demonstrates beyond cavil his fear that uninstructed members would have any doubts concerning accused's guilt overcome by the fact that he had participated in the earlier assault and should, therefore, be punished because of his generally bad behavior. Jurymen are unlikely to pay much attention to protestations of innocence when evidence of other, uncharged crimes is paraded before them unless they are also informed of the purpose for which such proof is admitted.

That is precisely why I believe that a law officer or president of a special court-martial should be required to instruct *sua sponte* on the limited end for which evidence of other misconduct is admitted. The theory behind the normal exclusion of such proof lies not only in its logical irrelevancy, but also in the inherent danger that court members will convict a "bad man" rather than one who is proven guilty of the specific counts alleged. If there exists this tendency on the part of jurors, military and lay, in sufficient degree normally to exclude such proof—and this is conceded in all jurisdictions—then it would seem equally as important to insure that the evidence is not misused when it is properly received. In short, as was noted by the Chief Judge, in United States v Bryant, supra, proof of other misconduct is ordinarily excluded, but if admissible, the limiting instruction is a "necessary concomitant" of its receipt. Accordingly, I believe its omission here was prejudicial. Certainly, I am unable to join the Chief Judge in his belief that the law officer so advised the court.

When affirmance is nonetheless ordered because of the defense counsel's opposition to the evidence's admissibility for any purpose, I believe we create further confusion and establish an *ad hoc* treatment of instructional questions which is scarcely designed to enhance the administration of military justice. Accordingly, I note my dissent from the rationale and conclusions of my brothers.

I would set aside the decision of the board of review and authorize a rehearing.