UNITED STATES, Appellee,

v

DANIEL KIRBY, Private, U. S. Army, Appellant

16 USCMA 517, 37 CMR 137

*Captain Raymond A. Di Luglio* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker, Major David J. Passamaneck,* and *Captain Peter A. Anderson.*

*Captain Maurice J. Kutner* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski, Colonel Joseph J. Crimmins,* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Fort Campbell, Kentucky, charged with desertion, in violation of Uniform Code of Military Justice, Article 85, 10 USC § 885. He pleaded not guilty but was found guilty as charged. He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for three years, and reduction to the lowest enlisted grade. The convening authority approved the sentence. A board of review in the office of the Judge Advocate General of the Army affirmed both the finding of guilty and the sentence.

This Court granted review to consider two issues which will be stated hereafter.

The evidence of record shows petitioner was absent without authority from Fort Jackson, South Carolina, for the period June 14 to December 3, 1965. On this latter date, he was apprehended by a Tennessee Highway Patrol comprised of a State officer and the deputy sheriff of Morgan County, Tennessee. When asked for identification, Kirby turned over Social Security and Selective Service registration cards, both bearing the name of Allen Ray Diamond. He carried no other indicia of identification. Later, at trial, these documents were admitted into evidence on the issue of specific intent.

It further appears that on September 20, 1965, during the unauthorized absence, accused had registered for the draft in Casper, Wyoming, using the name of Diamond. In so doing, he listed his next of kin as Mrs. Marvin Watson, a sister, of Thomaston, Georgia.

In keeping with Selective Service practices, a draft card was mailed to appellant's Casper, Wyoming, address. It was returned marked "Moved, left no address." Thereafter, the draft board received a change of address ostensibly from the accused giving his address as care of Gary D. Masters, General Delivery, Greensburg, Kansas. The draft registration card mailed to this second address was never returned.

The evidence further reflects while still in Casper accused was given dental treatment on September 27, 1965, by a local oral surgeon. Here, again, he used the name of Allen Ray Diamond.

In a voluntary statement given to the Commander of the Casual Detachment, Fort Campbell, accused acknowledged using the name of Diamond explaining that he had secured a wallet containing this identification and had used it to obtain employment, being without any other means of identification. In Greensburg, Kansas, he had worked for a construction firm using this alias and then for a rancher under his true name. Accused further stated that he gave the name of Diamond to the apprehending officers so he could get home to see his family.

In testifying in his own behalf, ac-

518

cused admitted using the Social Security and draft registration cards but denied forwarding a change of address notice to the draft board. According to the accused, these items were given him by his traveling companions. He had not signed any of these cards. On the other hand, he did acknowledge having a sister in Thomaston, Georgia, whose married name was Watson. Finally, Kirby asserted he was just "goofing off" with the apprehending officers when he used the false name. According to him, his true identity was known to these officers.

The first granted issue is:

The law officer erred to the substantial prejudice of the appellant by failing to give a limiting instruction, *sua sponte*, on the use to be made of evidence of other acts of misconduct which were uncharged.

Counsel for Kirby maintain that the evidence of accused's false registration under both the Universal Military Training and Service Act and the Social Security Act is evidence of offenses not charged,[1] and failure to provide limiting instructions thereon constitutes error. Prejudice is said to be apparent, for in view of mitigating defense evidence, it clearly appears that punishment was assessed in light of not only the desertion charged, but also for the violation of the above-mentioned Federal acts.

The essence of Government's answer is that the sole issue in dispute at trial was the existence of the requisite intent. This element may be shown by circumstantial evidence including evidence of other offenses or acts of misconduct. While, ordinarily, receipt of such evidence requires the importuning of limiting instructions, this is "not a rule of absolute or undeviating application." Thus, where properly received, accused is not entitled to an instruction that prevents it from being considered on the merits. In any event, assuming error, prejudice is nonexistent for the law officer specifically advised the court

---

[1] Cf. 50 USC App § 451, 462, 18 USC § 1001.

to vote a sentence "for the offense of which accused has been found guilty."

The rule has long been established that evidence of offenses, other than those charged, is generally inadmissible—for the intrusion of such evidence may endanger the integrity and essential fairness of the proceeding. United States v Yerger, 1 USCMA 288, 3 CMR 22; United States v Johnson, 3 USCMA 447, 13 CMR 3; United States v Hoy, 12 USCMA 554, 31 CMR 140. There are, however, recognized exceptions to this rule. Manual for Courts-Martial, United States, 1951, paragraph 138g; United States v Bryant, 12 USCMA 111, 30 CMR 111; United States v Keleher, 14 USCMA 125, 33 CMR 337; United States v Sellers, 12 USCMA 262, 30 CMR 262; United States v Hoy, supra.

Receipt of evidence relating to appellant's false draft registration, and his use of a Social Security card, obviously has bearing upon his intent to remain away permanently and thus falls within that exception to the above general rule. United States v Jones, 2 USCMA 80, 6 CMR 80; cf. Bantum v State, 46 Del 487, 85 A2d 741.

The acceptance of such evidence makes equally certain the law officer's duty to furnish limiting instructions as to its use; that advice being "a necessary concomitant of such evidence." United States v Back, 13 USCMA 568, 33 CMR 100; United States v Lewis, 14 USCMA 79, 33 CMR 291; United States v Conrad, 15 USCMA 439, 35 CMR 411; United States v Bryant, supra.

The omission of this admonition requires an assessment of the error for prejudice. The question is whether the "evidence of accused's guilt may be such that the failure to restrict proof of other misconduct may be fairly said to have weighed not at all in connection with the findings and sentence," or does it "present a fair risk that the fact finders accorded weight on the merits to the matter."

United States v Back, supra, at page 571.

Inception and termination of the unauthorized absence is unquestioned. Only as to the element of intent is there controversy. Prosecution evidence, as hereinbefore set out, is clearly consistent with an intent to remain away permanently. Appellant's cause, on the other hand, is subject to numerous self-effacing inconsistencies. Petitioner in one instance acknowledged use of the cards in question for he lacked other identification. Yet, in testifying, he acknowledged possession of dog tags. In a similar instance, he denied authoring a draft registration in the name of Diamond, showing next of kin as a sister living in Thomaston, Georgia. At the same time, he readily acknowledged having a married sister living in Thomaston. Similarly, he first informed the court he had been given the cards in question on about October 15th; that until then he had been using his own name—not having prior knowledge of other identification. Nonetheless, he then admitted using this same name when receiving dental treatment in Casper, Wyoming, on September 27th. In yet another instance, Kirby admitted lying about sending money home during his absence.

In short, when taken as a whole, the evidence of guilt is overwhelming in nature. There can, therefore, be no fair risk that accused was prejudiced as to the findings. United States v Satey, 16 USCMA 100, 36 CMR 256.

While compelling evidence of guilt eliminates prejudice as to findings, that fact alone does not prevent harm as to the sentence in the absence of limiting instructions. United States v Gewin, 14 USCMA 224, 34 CMR 4; United States v Turner, 16 USCMA 80, 36 CMR 236. Thus, in this case two basic considerations become paramount. The sentence imposed at the trial level constitutes the permissible maximum and it remains that even now. Progression of the case through the appellate processes has had no leavening effect.

At the same time, the effect of the evidence in question, when left unre-stricted, is overshadowing. In a word, there is here a fair risk of causal relation—hence prejudice—in these two factors. Doubts must be resolved in favor of the accused. Reassessment of the sentence is thus required. United States v Beaty, 15 USCMA 418, 35 CMR 390; United States v Turner, supra; United States v Gewin, supra.

The single issue remaining is:
Whether it was sufficient to instruct that: "A reasonable doubt may arise from the insufficiency of circumstantial evidence. . . ."

As part of his explanation of "reasonable doubt," the law officer declared:

"A reasonable doubt may arise from the insufficiency of circumstantial evidence, and such insufficiency may be with respect either to the evidence of the circumstances themselves or to the strength of the inferences drawn from them."

As conceived by the appellant, the questioned instruction is prejudicially erroneous in that it focused undue attention upon circumstantial evidence. There is thus the possibility the court members were misled into wrongfully believing if such evidence is adequate there can be no doubt of appellant's guilt—regardless of the quality of relevant direct evidence. Should the court reach such a conclusion, accused's testimony could be treated with utter disregard. This being so, prosecution would have an undue advantage. It is well settled that guilt beyond a reasonable doubt must be proven by all the evidence. Moreover, where the only competent evidence of the commission of the offense is circumstantial in nature, the instruction given is insufficient unless it includes the requirement to exclude every hypothesis of innocence. Lastly, the argument continues, where the weight and quality of circumstantial evidence is distinguished from direct evidence, the *instruction as a whole* concept is inapplicable.

Appellee's argument to the contrary put stress on the fact that guilt beyond a reasonable doubt may be estab-

lished by circumstantial evidence as well as by direct evidence; and where instructions on the standard of reasonable doubt are correctly conveyed, mere omission of "time honored terms" in the definition is not error.

In retrospect, we believe these latter expressions to be consistent with our own views in this matter. As has been argued, the questioned instruction follows the Manual[2] discussion on reasonable doubt. Its contents, examined separately, neither add nor detract from the applicable general rule. Permissive in nature, it is but a reminder of the rule, nothing more. Indeed, were harm to arise from such an instruction, it would here run against the Government for their cause rests on circumstantial evidence.

In addition, defense errs in saying that a stronger standard of proof is required in a circumstantial evidence case as compared with a direct evidence case. We rejected this contention in United States v Mason, 8 USCMA 329, 24 CMR 139, relying upon Holland v United States, 348 US 121, 99 L ed 150, 75 S Ct 127 (1954), rehearing denied January 31, 1955. Under the circumstances of this case, where the instruction as a whole correctly conveys the concept of "reasonable doubt to the jury," as it does here, we can ask for nothing more. Accordingly, we find no error.

The decision of the board of review as to the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Army for submission to the board of review for consideration of the sentence in accordance with this opinion.

Judge FERGUSON concurs.

---

[2] Manual for Courts-Martial, United States, 1951, paragraph 74a(3).

QUINN, Chief Judge (concurring in part and dissenting in part):

Except for the conclusion that there was an instructional error as to the sentence, I agree with the principal opinion.

Certainly, it is important, in regard to the findings, that the court members be instructed on the limited purpose for which evidence of other offenses is admitted against the accused. The reason for the rule is that, if no cautionary instruction is given, the court members might infer guilt "merely from the commission of other offenses." Montgomery v United States, 203 F2d 887, 891 (CA5th Cir) (1953). However, once the accused is properly convicted, the court members are entitled to relevant evidence to indicate the kind of person the accused is, and the kind of punishment that should be imposed. The Manual for Courts-Martial, United States, 1951, specifically recognizes the need for such evidence. It provides that "the prosecution and defense may present appropriate matter to aid the court in determining the kind and amount of punishment to be imposed." Id., paragraph 75a.

Acts of misconduct other than those charged, and other than previous convictions, may be admitted against the accused, in an appropriate situation. United States v Blau, 5 USCMA 232, 17 CMR 232. Here, the acts of misconduct are intimately connected with the accused's desertion. In my opinion, they are "appropriate matter" for the court-martial's consideration in determining a just sentence. The evidence was properly before the court, and can be regarded as matter in aggravation of the offense found. Compare my dissent in United States v Pavoni, 5 USCMA 591, 595, 18 CMR 215. I would, therefore, affirm the decision of the board of review.