**UNITED STATES, Appellee,**

v.

**Clyde LEVITT, Private U.S. Marine Corps, Appellant.**

No. 66,511.
NMCM 90–2847.

U.S. Court of Military Appeals.

Argued Feb. 13, 1992.

Decided Sept. 14, 1992.

For Appellant: *Vernell I. Scott* (argued); *Captain M.K. Schaller,* USMC.

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Colonel T.G. Hess,* USMC (on brief); *Commander Thomas W. Osborne,* JAGC, USN, and *Lieutenant Gregory P. Belanger,* JAGC, USNR.

*Opinion of the Court*

SULLIVAN, Chief Judge.

During February of 1990, appellant was tried by a special court-martial composed of officer members at Marine Corps Air Station, Beaufort, South Carolina. Contrary

to his pleas, he was found guilty by exceptions and substitutions of two specifications of larceny of jewelry from two junior enlisted Marines, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He was sentenced to a bad-conduct discharge and 3 months' confinement. On July 30, 1990, the convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and the sentence in an unpublished opinion dated January 11, 1991.

On October 1, 1991, this Court granted review of the following question of law:[1]

WHETHER THE MILITARY JUDGE'S LIMITING INSTRUCTION REGARDING GUNNERY SERGEANT R.R. BURNS' TESTIMONY WAS AN ERROR AND SUBSTANTIALLY PREJUDICED APPELLANT.

We hold that the military judge's limiting instructions were not erroneous and affirm. *See generally United States v. Thomas*, 11 MJ 388 (CMA 1981).

Appellant was charged with and found guilty of stealing two gold chains belonging to Lance Corporal James and a diamond ring belonging to Lance Corporal Jackson. The evidence of record indicates the following facts. Appellant took the gold chains from a closed desk in a mess-hall storeroom in April of 1989. After approximately 4 weeks, he returned them to their owner, Lance Corporal James. In early May 1989, appellant also took a ring from a console container in Lance Corporal Jackson's car in which appellant was a passenger. At the end of that month, he anonymously returned the ring to the place from which he had taken it during a second ride in the victim's car. His return of this ring in late May of 1989 occurred only after an investigation by Gunnery Sergeant Burns of the Criminal Investigation Division had begun into still another larceny of jewelry from a third soldier, which appellant was also suspected of having committed.

1. We also granted review in a second court-martial involving appellant, which we resolve

During the Government's case in chief, the defense objected to the testimony of Gunnery Sergeant Burns. An Article 39(a), UCMJ, 10 USC § 839(a), session was held, where Burns testified as follows:

### DIRECT EXAMINATION

Questions by the prosecution:

Q. Please be seated. [The witness was seated.] Will you state your name, rank, and armed force for the record?

A. My name is Gunnery Sergeant Robert R. Burns. I am a criminal investigator for the United States Marine Corps.

Q. Gunny, do you know the accused, Private Levitt?

\* \* \*

A. He's sitting at the defense table next to Captain Sprague [pointing toward the accused].

Q. May the record reflect that the witness has correctly identified the accused. Gunny, how do you know Private Levitt?

A. *I had an occasion on 25 May of '89 to interrogate Private Levitt in regards to the theft of jewelry.*

Q. Okay, and this was in your capacity as a criminal investigator?

A. Yes, sir.

Q. What was the substance of that interrogation?

A. *During the interrogation he was a suspect of taking jewelry and he was questioned in regards to his involvement.* At this time he kept denying that he was involved in the theft of the jewelry, during which I had offered suggestions to him as an interview technique, such as, if the person deserved to have his jewelry taken or stolen, and, you know, maybe that's a reason why you took it, or, other suggestions were if you needed money to put food on the table at home, or something like this. Basically, what I was trying to do was make him feel more at ease with telling me the truth about the matter.

this day. *United States v. Levitt*, 35 MJ 108 (CMA 1992).

Q. *Did you put forth scenarios concerning joking or teaching him a lesson?*

A. *Yes, sir. That would also be in my repertoire.*

TC: That's all the Government is after, sir.

MJ: Defense?

DC: No questions at this time, sir.

MJ: I see no reason for the Gunny to leave while we make our discussion about this. Defense, what exactly are you objecting to, and what's the basis?

DC: Sir, the defense objects based on relevance and [Mil.R.Evid.] 404(b) as far as questioning him with regard to stolen jewelry of a past charge. He was not questioned about these particular offenses.

MJ: Trial?

TC: *Sir, the Government's position through 404(b) is that this testimony is admissible to show intent. The accused returned the ring and came up with the defense of teaching him a lesson in SOP after he spoke with Gunnery Sergeant Burns.* Additionally, sir, the Government believes that the questions have been tailored such that nothing, no reference is made whatsoever to the prior court-martial, and since intent is an element of larceny and the Government has the burden of proving that, the Government believes this becomes relevant under [Mil.R.Evid.] 403 and admissible through the operation of 404(b).

MJ: Anything else you want to add, defense?

DC: No, sir.

MJ: *Well, I think this is a 404(b) question. First of all, I think it's highly relevant information regarding the accused's motive—I'm sorry, intent, as to the returning of these rings, his knowledge, or, the implication that the idea of some sort of defense as placed in the accused's mind by this witness which would cause him to act and return at least one of these pieces of jewelry. I think it can be inferred that it was returned after he talked with the Gun-* ny. It is also prejudicial to the accused, so, what I plan to do is allow it into evidence, and immediately after he testifies and both people have had an opportunity to cross-examine him, giving them an uncharged misconduct instruction, and then repeating that uncharged misconduct instruction during my general instructions at the end of the case.

Now, the one thing I want to make clear—see, here's what I'm getting at, trial counsel. I want to make it clear that the accused is not being questioned about these offenses, about this jewelry. So, when you ask the question, "Did you have an opportunity to talk to him?", the response from the Gunny should be, "Yes, I had to talk to him about some missing jewelry unrelated to the charges before the court today."

TC: Yes, sir.

MJ: Do you understand that, Gunny?

WITNESS: Yes, sir.

MJ: And then, since that's not before the court, immediately after that's over I will instruct them on how they can use this information, and they cannot use it for other misconduct to lead to the conclusion that the accused is a bad person and, therefore, he stole on this occasion. Any questions from counsel?

DC: So, Sir, is it going to come out then, the fact that Private Levitt admits to having or taking a ring not charged here today and returning it to Gunnery Sergeant Burns?

MJ: No. To the best of my knowledge, that's not going to be——

TC: No, sir. I'm going to ask him, "On May 25th did you have occasion to speak with Private Levitt?" "Yes." "Concerning what?" "Concerning the theft of jewelry unrelated to the charges before his court." "What was the nature of the interrogation?" "Denial; denial; denial; I offered scenarios." "Thank you."

MJ: So, we don't know what type of jewelry it was. We don't know if he's ever been convicted, or—all he knows is that this person was investigating it and that the accused denied it.

TC: Right; the Gunny won't even say that he admitted taking the ring before, just "Denial; denial; denial; I offered scenarios"; that was it.

DC: Then, sir, why do we have to make it a point that it was unrelated to this charge?

MJ: Well, the reason—see, if he just comes in—I'm concerned if he just comes in and talks about jewelry, then you've got a denial by the accused that really didn't apply to these charges, but they could certainly—that would be obvious to me if I were sitting over there in the members' box; well, he denied taking jewelry; that's this case before us; and that's not the case before us. Do you concur with that assessment, trial?

TC: Yes, sir.

MJ: Let me find my uncharged misconduct instruction here.

DC: So, sir, the questioning is going to end when we get to the point where the Gunnery Sergeant offered these possible scenarios to Private Levitt?

MJ: Yes, that's my understanding. Is that correct?

TC: Yes, sir, then it will be your witness [to DC].

[The military judge took a few moments to look through Benchbook.]

Very well. Both sides are ready to proceed?

TC: The Government is, sir.

DC: Defense is, sir.

(Emphasis added.) Gunnery Sergeant Burns then testified before the members as follows:

Q. Gunny, how do you know Private Levitt?

A. On the 25th of May 1989 I had an occasion to interrogate Private Levitt in regards to some stolen jewelry that is unrelated to the charges that are before him now.

Q. Would you please tell the members what the nature of that interrogation was?

A. He was a suspect and I was interrogating him, trying to get him to tell me if he did, in fact, have in his possession the stolen property or not, at which time he kept denying that he did have it. During the course of the interrogation I did offer up suggestions to him, such as perhaps he needed the property for a reason, or perhaps the victim deserved it, to have his property stolen from him, or perhaps that maybe he just took the property, joking around with the person, at which time these suggestions were offered to him.

Q. And these are scenarios that are— these are investigative techniques used?

A. Yes, sir.

Q. *Okay. Did you offer a scenario that maybe he took the ring to teach, or, the property, or whatever it was, to teach a lesson?*

A. *Yes, sir.*

TC: No further questions, sir.

MJ: Defense?

DC: No questions, sir.

(Emphasis added.) The military judge then immediately instructed the members as follows:

MJ: Before I allow you [members] to ask some questions, if you want to, let me give you an instruction on this evidence. You now have evidence that Gunny Burns interrogated the accused regarding an unrelated matter to this court of missing or stolen jewelry. This information may be considered by you for the limited purpose of its tendency, if any, to prove that the accused intended to keep the jewelry, in other words, his intent to permanently deprive the owner of this jewelry, in the charges before the court. You can also consider this to show the accused's awareness of his guilt of the offenses charged. You can also use this information—I believe that's the only two ways you can consider this information; one, to prove that he intended to permanently deprive the owners of this jewelry, or, two, to show awareness of his guilt of the offense charged.

You may not consider this evidence for any other reason and you may not conclude from the evidence that the accused

is a bad person or has a criminal tendency, or that he, therefore, committed the offense charged because of some criminal tendency or that he's a bad person. Do you have any questions about this instruction, Mr. President, or any of the members?

Let the record reflect a negative response from the members. Do any of the members have any questions for this witness? Let the record reflect a negative response from the members. Trial counsel, do you wish to have this witness subject to recall?

TC: No, sir.

MJ: Defense?

DC: No, sir.

MJ: Very well. Thank you very much, Gunny. You're excused. You may return to your duties.

[The witness withdrew from the courtroom.]

Finally, in his closing instructions the military judge instructed the members as follows:

Now, evidence that Gunnery Sergeant Burns interrogated the accused may be considered by you for the limited purpose of its tendency, if any, to prove that the accused intended to permanently deprive the alleged victims of the jewelry and to show the accused's awareness of his guilt of the offense charged. You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has criminal tendencies and that he, therefore, committed the offenses charged.

---

As a preliminary step in resolving the granted issue, we must particularly examine the testimony of Gunnery Sergeant Burns in terms of its logical relevance. *See* Mil.R.Evid. 401 and 402, Manual for Courts–Martial, United States, 1984. This witness testified that in May of 1989 he suspected appellant of taking some jewelry from another Marine and questioned appellant about this offense. He also testified that appellant repeatedly denied this charge. Finally, Sergeant Burns testified that he asked appellant if he took the ring to teach the Marine a lesson. The prosecution argued that this evidence showed appellant formed his intent to return the stolen diamond ring in this case only after his investigation and interview by Sergeant Burns for another offense. *See* 2 Wigmore, *Evidence* §§ 244–45 (Chadbourn rev. 1979). Accordingly, it inferentially argued that appellant's initial intent in taking Corporal Jackson's ring was to deprive him of it permanently.

The second matter we must address in this case is the limited purpose for which the prosecution offered this evidence.[2] Appellant, as noted above, was charged with larceny of fellow Marines' jewelry in violation of Article 121(a)(1). This statute requires an "intent permanently to deprive or defraud another person of" his property. This statute also permits a conviction for the lesser offense of wrongful appropriation if the intent of the accused is to deprive or defraud temporarily. Art. 121(a)(2). The punishment differential for these two offenses is substantial. *See* para. 46e(1) and (2), Part IV, Manual, *supra*. Accordingly, appellant's intent in taking the jewelry (*i.e.*, either permanent or temporary deprivation) was a significant issue in his case. *See* para. 46c(1)(f).

Turning to the record before us, we particularly note that the Government's own

---

2. Military law has long recognized that evidence of uncharged misconduct may not be used at courts-martial to show that an accused has a bad character and probably committed the charged offenses. However, it has also recognized that such evidence may be admitted for other limited purposes at courts-martial. *See* para. 138g, and Mil.R.Evid. 404 (Change 3), Manual for Courts–Martial, United States, 1969 (Revised edition); para. 138g, Manual for Courts–Martial, United States, 1951; para. 125b, Manual for Courts–Martial, U.S. Army, 1949; para. 112b, Manual for Courts–Martial, U.S. Army, 1928; para. 205, Manual for Courts–Martial, U.S. Army, 1921. From the beginning, this Court has relied heavily on Federal decisions in applying this rule. *See United States v. Marshall,* 2 USCMA 54, 6 CMR 54 (1952).

proof showed appellant returned the allegedly stolen jewelry prior to trial. *See generally* 2 Wigmore, *Evidence* § 348(2) at 319 (Chadbourn rev.1979). Lance Corporal James testified that his two gold chains were taken in the middle of April 1989 but were returned to him by appellant around mid-May 1989. He further stated that appellant said he "should learn to keep up with or hold onto your valuables." Lance Corporal Jackson also testified that his diamond ring was taken in early May 1989 after appellant took a ride in his car. He further stated that it was rediscovered in his car in late May of 1989 after appellant took a second ride in his car. He also testified that appellant only asked him if he found his ring. Accordingly, obvious ambiguities as to appellant's intent existed in the prosecution's case which required clarification. *See United States v. Bender,* 33 MJ 111, 112 (CMA 1991) (Sullivan, C.J., concurring); *see generally Estelle v. McGuire,* — U.S. —, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

█ The granted issue in this case questions the propriety of the military judge's instructions concerning the above use of this evidence. *See generally* para. 7–13, Military Judge's Benchbook at 7–21 (Dept. of the Army Pamphlet 27–9 (1 May 1982)).[3] Uncharged-misconduct evidence, of course, is a dangerous commodity. *See, e.g., United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Even when admissible for a legitimate purpose, its admission must be carefully controlled because such evidence has great potential for creating inferences about an accused's guilt based on his character. For example, the members might have been tempted to infer from Gunnery Sergeant Burns' testimony that appellant was an habitual criminal or thief and therefore probably committed the crimes or thefts then under consideration. At the very least when requested (*see* Mil.R.Evid. 105), the military judge has a duty to protect the court-martial members from the undue prejudice posed by uncharged-misconduct evidence. *See generally Thompson v. United States,* 546 A.2d 414 (D.C.App. 1988).

█ To perform this duty, the military judge can and should employ effective limiting instructions. Such an instruction must specifically identify the purpose or purposes for which the evidence is legitimately admitted. *See, e.g., United States v. Burkett,* 821 F.2d 1306, 1309 (8th Cir. 1987) (holding that the trial court's explicit limitation of the uses of the evidence "properly limited the jury's consideration of th[e] evidence"); *United States v. Merryman,* 630 F.2d 780, 786 (10th Cir.1980) (approving the trial court's "specific admonition" to use the evidence only for precisely identified purposes); *United States v. Evans,* 572 F.2d 455, 485 (5th Cir.1978) (approving the trial court's narrow restriction of the permissible uses of the evidence), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *see also* S. Saltzburg & H. Perlman, 1 Federal Criminal Jury Instructions 2.14A at I–22 (1985);[4] L. Sand, J. Siffert, W. Loughlin, and S.Reiss, 1 Modern Federal Jury Instructions Criminal [hereafter Sand] 5–25 at 5–60 (1990).[5] Merely reciting the purposes allowed by Mil. R.Evid. 404(b) without identifying the pre-

---

3. The need for limiting instructions concerning use of uncharged-misconduct evidence at courts-martial is largely a product of our case law. *See* RCM 920(e), Discussion, Manual for Courts–Martial, United States, 1984; para. 73*a*, Manual for Courts–Martial, United States, 1969 (Revised Edition) and Analysis of Contents, Manual for Courts–Martial, United States, 1969 (Revised edition), citing this Court's decisions in *United States v. Lewis,* 14 USCMA 79, 33 CMR 291 (1963); *United States v. Back,* 13 USCMA 568, 33 CMR 100 (1963); *United States v. Hoy,* 12 USCMA 554, 31 CMR 140 (1961). Moreover,

in fashioning appropriate instructions this Court has not demanded strict adherence to the Military Judges Guide. *See United States Bryant,* 3 MJ 9, 10 n.3 (CMA 1977); *United States v. Howard,* 23 USCMA 187, 190, 48 CMR 939, 942 (1974).

4. Saltzburg and Perlman offer a model instruction which is set out in Appendix I.

5. These authors offer a model instruction which is set out in Appendix II.

cise purpose for which the evidence may be used in a particular case will not suffice. *See United States v. Rivera,* 837 F.2d 906, 912–13 (10th Cir.1988) (holding inadequate giving a "laundry list" of purposes allowed under Fed.R.Evid. 404(b)); *see generally United States v. Brannan,* 18 MJ 181 (CMA 1984). Moreover, the instruction must expressly bar use of the evidence for improper purposes, including proof of bad character or propensity for crime. *See United States v. Evans,* 572 F.2d at 484–85; *see also* Sand, *supra* 5–25 at 5–60.

▮ To be most effective, a proper instruction should be given immediately after the evidence is presented. *United States v. Rivera,* 837 F.2d at 913; *see also* Saltzburg & Perlman, *supra* 2.14A at I–22. Moreover, to reinforce the limitations on the evidence's use, the instruction should also be repeated prior to commencement of deliberations. *United States v. Rivera,* 837 F.2d at 913. Finally, it should be phrased so as to remove any suggestion by the military judge that he believes the uncharged misconduct in fact occurred or that any inference must be drawn from its occurrence. *See United States v. Evans,* 572 F.2d at 485 (approving an instruction which "made clear...that the jury was not, in any event, obliged to draw an inference from the prior, similar acts" (footnote omitted)); *see also United States v. Merryman,* 630 F.2d at 786.

▮ The military judge's instructions in this case met the above criteria. He clearly prohibited harmful and illegitimate uses of the evidence, including proof of bad character or criminal proclivity. Moreover, he gave the instruction immediately after Gunnery Sergeant Burns' testimony and again during his final instructions. By his use of the phrase, "if any," in both instructions, the military judge also made clear that he did not endorse the testimony as

either true or probative. Finally, he particularly identified the evidence's proffered purpose of showing intent.[6] *United States v. Gordon,* 780 F.2d 1165, 1173–74 (5th Cir.1986). In sum, the military judge's instructions were not erroneous. *United States v. Thomas,* 11 MJ 388.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

### APPENDIX I

You are hearing evidence about [describe other acts—e.g., other bank robberies] that the government claims the defendant [choose appropriate term—(did), (committed), (was involved in), etc.]. You must decide whether or not you believe this evidence is accurate.

If you do not believe it to be accurate, you should ignore it. If you do believe it is accurate, you may use the evidence to help you decide [describe the specific purpose for which the evidence is offered—e.g., whether the similarity between the other bank robberies and the one charged in this case suggests that the same person committed all of them]. This is the only use you may make of the evidence. The law does not allow you to convict a defendant or to punish him simply because you believe he may have done things, even bad things, not specifically charged as crimes in this case. A defendant is on trial for the crime(s) charged, and you may use the evidence of acts not charged only to help you decide [repeat the specific purpose for which the evidence is offered].

### APPENDIX II

The Government has offered evidence tending to show that on a different occa-

---

6. The military judge also instructed the members that the uncharged-misconduct evidence could be used to show appellant's knowledge of his guilt. *See generally* 1A Wigmore, *Evidence* § 173 at 1840 (Tillers rev.1983) and 2 Wigmore, *Evidence* § 273 (Chadbourn rev.1979). The military judge did not fully explain to the members how Gunnery Sergeant Burns' testimony showed appellant's consciousness of guilt and how such fact was relevant in appellant's case. *See* 2 Wigmore, *supra* § 281 at 145–46. Nevertheless, we have held that reversible error does not occur in this situation absent a specific defense objection. *See United States v. Thomas,* 11 MJ 388, 394 (CMA 1981).

sion the defendant engaged in conduct similar to the charges in the indictment.

In that connection, let me remind you that the defendant is not on trial for committing this act not alleged in the indictment. Accordingly, you may not consider this evidence of the similar act as a substitute for proof that the defendant committed the crime charged. Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of the other, similar act was admitted for a much more limited purpose, and you may consider it only for that limited purpose.

If you determine that the defendant committed the acts charged in the indictment and the similar acts as well, then you may, but you need not draw an inference that in doing the acts charged in the indictment, the defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons.

Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act he must also have committed the act charged in the indictment.