# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39342**

_____

**UNITED STATES**
*Appellee*

**v.**

**Jerard SIMMONS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 9 April 2019

_____

*Military Judge:* Patricia A. Gruen.

*Approved sentence:* Dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 14 July 2017 by GCM convened at Joint Base Langley-Eustis, Virginia.

*For Appellant:* Zachary D. Spilman, Esquire (argued); Major Mark J. Schwartz, USAF.

*For Appellee:* Captain Peter F. Kellett, USAF (argued); Lieutenant Colonel Joseph J. Kubler, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

JOHNSON, Senior Judge:

A general court-martial composed of officers convicted Appellant, contrary to his pleas, of four specifications of sexual assault of a child, one specification

of extortion, and one specification of producing child pornography in violation of Articles 120b, 127, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 927, 934. The court members sentenced Appellant to a dishonorable discharge, confinement for 12 years, total forfeiture of pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises seven issues on appeal: (1) whether the military judge committed plain error by allowing evidence of Appellant's pre-service sexual relationships with the victims; (2) whether Appellant's conviction for extortion is legally sufficient; (3) whether the findings are factually sufficient; (4) whether Appellant's conviction for production of child pornography is legally and factually sufficient where the alleged child pornography was not introduced at trial; (5) whether the military judge erroneously permitted the Prosecution to make a major change to a specification over defense objection; (6) whether trial counsel made an improper argument on findings; and (7) whether Appellant's sentence is inappropriately severe. In addition, we specified two issues regarding the post-trial processing of Appellant's case.[1]

We find no prejudicial error with respect to the issues raised by Appellant, but we find that post-trial errors require new post-trial processing and action.

## I. BACKGROUND

In September 2012, Appellant was an 18-year-old high school senior in Norfolk, Virginia. One of his classmates in his Spanish class was CL, a 14-year-old

---

[1] We specified the following issues:

> IS APPELLANT ENTITLED TO NEW POST-TRIAL PROCESSING OR OTHER APPROPRIATE RELIEF BECAUSE THE STAFF JUDGE ADVOCATE INCORRECTLY ADVISED THE CONVENING AUTHORITY THAT THE CONVENING AUTHORITY COULD NOT DISAPPROVE THE FINDINGS OF GUILT WITH RESPECT TO CHARGES I AND III AND THEIR SPECIFICATIONS, AND COULD NOT DISAPPROVE, COMMUTE, OR SUSPEND IN WHOLE OR IN PART APPELLANT'S ADJUDGED PUNITIVE DISCHARGE AND CONFINEMENT?

> IS APPELLANT ENTITLED TO NEW POST-TRIAL PROCESSING OR OTHER APPROPRIATE RELIEF BECAUSE THE AREA DEFENSE COUNSEL'S CLEMENCY MEMORANDUM ERRONEOUSLY IMPLIED THE CONVENING AUTHORITY LACKED THE ABILITY TO REDUCE APPELLANT'S TERM OF CONFINEMENT, AND THE STAFF JUDGE ADVOCATE FAILED TO ADDRESS THIS ERROR? *SEE UNITED STATES V. ZEGARRUNDO*, 77 M.J. 612 (A.F. CT. CRIM. APP. 2018).

female freshman. Friendly classroom interactions between the two led to an exchange of phone numbers, communications by text and Facebook, and other contact outside of school. Eventually Appellant and CL developed a sexual relationship, specifically CL would perform oral sex on Appellant. CL later estimated this occurred between 15 and 20 times during her freshman year. These encounters took place at CL's home and at a nearby park. Sometimes Appellant would take out his phone as if to take a picture of CL as she performed oral sex. Eventually Appellant sent CL such a picture of his penis in her mouth. CL later testified Appellant would refer to the picture and threaten to "post" it in order to pressure her for "bl[**]jobs." According to CL, the intimate relationship ended in the summer of 2013 after Appellant "had gotten a girlfriend."

In the meantime, in the spring of 2013 Appellant met AS, another 14-year-old girl who also lived in Norfolk but attended a different school. They met through D, a 14-year-old friend of AS and acquaintance of Appellant. Appellant and AS began communicating through text messages and Facebook. By late spring or early summer 2013, Appellant and AS developed a sexual relationship including vaginal and oral sexual intercourse. The relationship ended in late July 2013 before Appellant joined the Air Force.

Appellant joined the Air Force in August 2013. Appellant returned to Norfolk on leave between 21 December 2013 and 2 January 2014. CL later testified that at some point after Appellant joined the Air Force he resumed pressuring her to perform oral sex by referring to the picture of her that he had previously taken. As a result, CL testified that she "had to start giving him oral again during New Year's." CL estimated she performed oral sex on Appellant approximately five times after he joined the Air Force, "mostly" at the park near her house. CL was 15 years old at the time. CL testified this resumption of the sexual relationship ended after New Year's Day of 2014 when Appellant "just stopped talking to [her] about bl[**]jobs and stuff."

After Appellant completed basic training and technical school he was assigned to Joint Base Langley-Eustis, Virginia, near Norfolk. He returned to the Norfolk area in late March 2014 to perform recruiter assistance duty and then arrived at Langley on 5 April 2014. AS later testified that when Appellant was on recruiter assistance duty he began to meet with her again to engage in oral, anal, and vaginal sex. AS met with Appellant secretly to keep her relationship with Appellant hidden from her mother, with whom AS lived. On various occasions Appellant and AS met in a parking lot, in AS's house when her mother was not home, and late at night in the backyard of AS's house. AS estimated there were "four or five" such encounters. AS was 15 years old at the time.

On the night of 3–4 July 2014, AS was performing oral sex on Appellant in her backyard when she noticed that Appellant was recording a video of her

with his phone. AS told Appellant she did not want him to make a video. Appellant showed her the video which was approximately ten seconds long. The video depicted Appellant's penis going inside AS's mouth. AS asked Appellant to delete the video, but he told her he "wanted to keep it" because he thought it was "funny." AS did not know if Appellant ever deleted the video.

Appellant was charged with three specifications of sexual assault of a child against AS, one specification each of penetrating her vulva, anus, and mouth with his penis on divers occasions between on or about 20 August 2013 and on or about 31 August 2014 (Charge I, Specifications 1–3). In addition, Appellant was charged with one specification of sexual assault of a child against CL by penetrating her mouth with his penis on divers occasions between on or about 20 August 2013 and on or about 30 June 2014 (Charge I, Specification 4). He was also charged with one specification of extorting CL on divers occasions to perform oral sex on him by threatening to publicize an image of CL performing oral sex on him; this was originally charged as occurring between on or about 2 August 2014 and on or about 31 December 2014, but during the trial the military judge permitted the Government to extend the beginning of the time frame back to on or about 27 October 2013 (Charge II and its Specification). Finally, Appellant was charged with producing child pornography between on or about 1 July 2014 and on or about 8 July 2014 (Charge III and its Specification). A panel of officer members convicted Appellant of every charge and specification, although they made exceptions and substitutions to find Appellant guilty of Charge I, Specification 4—sexually assaulting CL—on only a single occasion on or about 31 December 2013.

## II. DISCUSSION

### A. Appellant's Pre-Service Relationships with CL and AS

#### 1. Additional Background

Before trial, the Government submitted a notice and motion pursuant to Military Rule of Evidence (Mil. R. Evid.) 412 to admit evidence of the victims' sexual behavior with Appellant prior to August 2013 when he joined the Air Force.[2] The motion explained the Government intended to introduce such evidence under Mil. R. Evid. 404(b) to demonstrate Appellant's motive, intent, knowledge, and absence of mistake as to the victims' ages, and preparation by grooming CL and AS for further sexual activity. The Defense did not submit a

---

[2] Mil. R. Evid. 412(b)(1)(B) provides, *inter alia*, that "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered . . . by the prosecution" is an exception to the general prohibition on evidence an alleged victim of a sexual offense engaged in other (uncharged) sexual behavior or had a sexual predisposition set forth in Mil. R. Evid. 412(a).

written response to the Government motion. At the outset of the trial the military judge asked the Defense if there was an objection "to the information that Trial Counsel wants to admit." Trial defense counsel responded "No, Your Honor."

Both trial counsel and civilian defense counsel referred to Appellant's pre-service sexual behavior during their opening statements. During their testimony, both CL and AS described their recollections of their sexual activity with Appellant prior to August 2013, as summarized above. The Defense did not object on the grounds that this was impermissible propensity evidence prohibited by Mil. R. Evid. 404(b)(1), nor did the Defense request a specific instruction addressing propensity evidence.

After the Defense rested its case, trial counsel requested that the military judge instruct the court members that they could use Appellant's pre-service acts with CL and AS as propensity evidence of his guilt of the charged offenses under Mil. R. Evid. 414. In commenting on trial counsel's request, civilian defense counsel stated his understanding that evidence of the pre-service sexual acts "was only ever admissible for the purposes of showing [Appellant's] knowledge as to their age." The military judge denied trial counsel's request.

The military judge instructed the court members with respect to findings that, *inter alia*, Appellant may not be convicted "on evidence of a general criminal disposition."

### 2. Law

In general, "[w]e review a military judge's decision to admit or exclude evidence for an abuse of discretion. 'A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect.'" *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (citation omitted) (quoting *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015)). However, "[w]hen an appellant does not raise an objection to the admission of evidence at trial, we first must determine whether the appellant waived or forfeited the objection." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). We review forfeited issues for plain error, whereas "a valid waiver leaves no error to correct on appeal." *Id.* (citations omitted). To prevail under a plain error analysis, an appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (citations omitted). Whether an accused has waived or

merely forfeited an issue is a question of law we review de novo. *Ahern*, 76 M.J. at 197 (citing *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005)).

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is generally not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion. However, such evidence may be admissible for another purpose, including, *inter alia*, proving motive, opportunity, intent, preparation, knowledge, or absence of mistake. Mil. R. Evid. 404(b)(2). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989). We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b):

> 1. Does the evidence reasonably support a finding by the court members that [the] appellant committed prior crimes, wrongs or acts?
>
> 2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?
>
> 3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

*United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (alterations in original) (quoting *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989)).

**3. Analysis**

Appellant contends the military judge committed plain error because "it is clear or obvious that Appellant's pre-service sexual relationships with CL and AS are not probative of any material issue other than character, and because any probative value is substantially outweighed by the danger of unfair prejudice." The Government contends the Defense waived this issue at trial, and even if it were not waived the military judge did not commit plain error. We agree with the Government that the Defense waived this issue.

"A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005)). The Defense's decision not to object was not an oversight. The Government's pretrial notice and motion, filed over four months before trial, squarely presented the Defense with the question of whether or not it objected to this evidence which the Government offered under multiple theories of admissibility pursuant to Mil. R. Evid. 404(b). The Defense not only declined to respond to the motion in writing; trial defense counsel affirmatively told the military judge the Defense did not object to the evidence. As the United States Court of Appeals for the Armed Forces (CAAF) recently

explained, "under the ordinary rules of waiver, Appellant's affirmative statements that he had no objection to [the] admission [of evidence] also operate to extinguish his right to complain about [its] admission on appeal." *Ahern*, 76 M.J. at 198 (citing *Campos*, 67 M.J. at 332–33; *United States v. Smith*, 531 F.3d 1261, 1267–68 (10th Cir. 2008)).

We recognize that "[w]hether a particular right is waivable; whether the [accused] must participate personally in the waiver; whether certain procedures are required for waiver; and whether the [accused]'s choice must be particularly informed or voluntary, all depend on the right at stake." *Id.* at 197 (quoting *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011)). Yet we find the Defense's affirmative decision not to object to the Government's motion and evidence substantially similar to the defense's affirmative decision not to object to the Government's motion and evidence in *Ahern*, where the CAAF found "the ordinary rules of waiver" applied. *See id.* at 197–98. We do not purport to hold that every time a trial defense counsel asserts there is "no objection" to a Government motion or evidence the matter is waived on appeal, but under the particular facts of this case we do find waiver.

Assuming *arguendo* Appellant did not waive this issue at trial, we do not find the military judge committed *plain* error with respect to the evidence of Appellant's pre-service sexual activity with the victims. In order to obtain relief under the plain error standard, Appellant must demonstrate error that was plain or obvious in light of the three-prong test for evidence offered under Mil. R. Evid. 404(b) articulated in *Reynolds*. *See Staton*, 69 M.J. at 230. As for the first prong, Appellant concedes the evidence supports a finding that he engaged in pre-service sexual activity with CL and AS. We agree.

As for the second prong, evidence that CL performed oral sex on Appellant before August 2013 was manifestly relevant to prove the charged offense of extortion. In order for the Government to prove Appellant used a photo of CL performing oral sex to coerce her to engage in further acts, the Government needed to demonstrate Appellant had the opportunity to create such an image. Evidence that CL performed oral sex on Appellant prior to the point that he allegedly began extorting her was therefore relevant. As for AS, based on the Government's motion and the Defense's failure to object, the military judge had little reason to doubt that the parties agreed the expected evidence would be probative of such issues as Appellant's knowledge of the victims' ages, his opportunity to commit the offenses, and his preparation or plan for a continuing course of conduct. Viewed through the lens of the plain error standard, we cannot say the military judge plainly or obviously erred by not excluding this evidence *sua sponte*.

As for the third prong, we do not find obvious error in the military judge's failure to exclude *sua sponte* evidence of Appellant's pre-service sexual activity

with the victims on the basis that the probative value was *substantially* out-weighed by the danger of unfair prejudice. Again, with regard to CL, evidence of pre-service oral sex had high probative value with respect to the extortion charge. With respect to AS, the danger of unfair prejudice was mitigated to an extent by trial defense counsel's frank acknowledgement from his opening statement onward that Appellant did engage in sexual activity with AS after he joined the Air Force; the defense was based on Appellant's purported reasonable mistake of fact as to AS's age. Therefore, the impact of any improper implication of propensity to the effect that Appellant's pre-service sexual activity with AS made it more likely that he engaged in sexual activity with her after he joined the Air Force was significantly blunted. Additionally, evidence of pre-service sexual activity with AS had significant non-propensity probative value for the Government's case, for example as necessary context for AS's testimony about the following conversation regarding Appellant's knowledge of her age:

> One time I even asked him, I was like--we were sitting--it was before he joined the Air Force, we were sitting in his car, and I was like, I'm 14, you know, is that weird that I'm so young and you want to like mess around with me, and he was like no, because the youngest girl I'd have sex with is 12, so he knew.

Furthermore, we do not find trial counsel made any improper propensity-based arguments to the court members during findings. Applying the plain error standard of review, we do not find the military judge plainly or obviously erred by failing to exclude *sua sponte* evidence that the Defense evidently agreed was admissible on the basis that its probative value was substantially outweighed by the danger of unfair prejudice.

Although not raised as a separate assignment of error, it is appropriate to consider separately the military judge's failure to give a limiting instruction with respect to the Government's Mil. R. Evid. 404(b) evidence. We do not find Appellant's waiver with regard to the admissibility of evidence of pre-service sexual activity with CL and AS extended to waiver of a possible limiting instruction. Trial defense counsel did not affirmatively decline such an instruction. However, the Defense also did not request such an instruction, and did not object to the military judge's instructions which did not include such a limiting instruction. Accordingly, we review the military judge's decision not to provide a limiting instruction for plain error. *See United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (citation omitted).

Despite the absence of any defense request or objection, the military judge's decision not to provide a limiting instruction gives us pause. We acknowledge that evidence of uncharged misconduct has some "potential for creating inferences about an accused's guilt based on his character." *United States v. Levitt,*

35 M.J. 114, 119 (C.M.A. 1992). Certainly, *when requested*, the military judge has a duty to instruct court members on the proper use of such evidence. *Id.* (citation omitted); *see* Mil. R. Evid. 105 ("If the military judge admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the military judge, *on timely request*, must restrict the evidence to its proper scope and instruct the members accordingly." (emphasis added)). However, the Defense did not request such an instruction in this case, and we perceive plausible tactical reasons for not doing so. For example, such a limiting instruction may have invited the military judge to recount to the members the various permissible uses of such evidence. Given that the evidence of pre-service sexual activity was plainly relevant with respect to the charged extortion of CL and that the Defense did not even contest that Appellant engaged in post-accession sexual activity with AS, the perceived cost of having the military judge recapitulate how this evidence potentially supported the Government's case in her instructions may have outweighed any practical benefit.

The military judge did instruct the court members that evidence of each offense must "stand on its own" and that Appellant could not be convicted based on evidence of a "general criminal disposition." Appellant argues trial counsel improperly invoked the pre-service sexual acts during the opening statement and closing argument as "a rallying cry for the members to convict him even though he is innocent of the charged offenses." To the contrary, we find trial counsel's accurate statements regarding jurisdiction and the time periods that were the subject of the charged offenses simply oriented the court members to the issues that were before them for decision. Once again, viewed through the lens of plain error analysis, we cannot say the military judge plainly or obviously erred by omitting a limiting instruction that the Defense never sought regarding pre-service sexual activity.

For the foregoing reasons, we conclude Appellant waived his objection to evidence of pre-service sexual acts with the victims and, assuming *arguendo* he did not waive it, the military judge did not commit plain error by admitting the evidence of such acts. Moreover, we conclude the military judge did not plainly err by omitting a limiting instruction in the absence of a defense request or objection. Recognizing our authority to grant relief in spite of Appellant's waiver and forfeiture, *see United States v. Hardy*, 77 M.J. 438, 443 (C.A.A.F. 2018), we find such action is not warranted in this case.

## B. Legal and Factual Sufficiency

### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66, UCMJ, 10 U.S.C. § 866; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002)

(citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citation omitted); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "The term reasonable doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)).

## 2. Factual Sufficiency of Sexual Assault

The elements of Specifications 1 through 4 of Charge I, which allege the offense of sexual assault of a child in violation of Article 120b, UCMJ, of which Appellant was convicted, include: (1) that on the dates alleged, Appellant committed the specified sexual act—penetration of the vulva, anus, or mouth with his penis—on the named victim; and (2) that at the time the victim had attained the age of 12 years but had not attained the age of 16 years. *See Manual for Courts-Martial, United States*, pt. IV, ¶ 45b.a.(b), (2012 ed.) (2012 *MCM*). The Government was not required to prove Appellant knew CL or AS were under 16 years of age when the acts occurred. *See* Article 120b(d)(2), UCMJ, 10 U.S.C. § 920b(d)(2).

With regard to his conviction for sexually assaulting CL, Specification 4 of Charge I, Appellant contends that CL's memory and testimony regarding her sexual activity with Appellant after he joined the Air Force were unclear. We agree that CL's testimony regarding the exact number and overall timeframe of her encounters with Appellant after August 2013 was not clear. However,

CL was clear that she engaged in oral sex with Appellant on at least one occasion on or about 31 December 2013, as the court members found. This testimony was bolstered by Facebook message exchanges between Appellant and CL that the Government introduced, which included the following from 27 October 2013:

> [Appellant (APP):] My d[**]k wants to talk to your mouth again.
> [ ]
>
> [CL:] Too bad. [ ] s[**]k it yourself lol
>
> [APP:] Nah. I can get you to do it when I get back in VA. [ ]
>
> [APP:] Lol trust me on that.
>
> . . . .
>
> [APP:] Then you'll be back s[**]king me off for Xmas. [ ]

CL's testimony was further supported by evidence that Appellant was on leave in Norfolk between 21 December 2013 and 2 January 2014.

With regard to the sexual assaults against AS, on appeal as at trial Appellant does not contend that he did not engage in sexual intercourse with AS after he joined the Air Force. AS's testimony in that regard is strongly supported by other evidence. For example, the Air Force Office of Special Investigations (AFOSI) arranged a pretext phone call from AS to Appellant in which he acknowledged having sex with her during 2014.

Instead of contesting whether sexual intercourse occurred, Appellant contends the Government "did not disprove" that Appellant had a mistake of fact as to AS's age. As the military judge instructed the court members, an honest and reasonable mistake as to AS's age would be a defense to Specifications 1, 2, and 3 of Charge I; however, the burden was on the Defense to establish by a preponderance of evidence that Appellant was under such a mistaken belief. Article 120b(d)(2), UCMJ, 10 U.S.C. § 920b(d)(2). We do not find Appellant held such an honest and reasonable mistaken belief as to AS's age. AS testified clearly that Appellant knew her age. Although they attended different schools, AS had talked with Appellant about the fact that she was a freshman when they met. In particular, as described above, AS testified that on one occasion before Appellant joined the Air Force she asked him if it was "weird" that Appellant wanted to "mess around" with her because she was only 14 years old at the time, and Appellant "was like no, because the youngest girl [Appellant would] have sex with is 12." Furthermore, Appellant knew AS's friend D through whom Appellant and AS first met; like AS, D was a 14-year-old freshman in the spring of 2013. In addition, Appellant tacitly acknowledged he knew AS was underage when she called him at AFOSI's behest on the false pretext that she was concerned about disease. AS asked Appellant, "I'm not trying to

like put you like on the spot or anything, but like you didn't have [herpes] when I was 14, right?" Appellant responded, "No, and I don't have it at all."

Appellant cites certain conversations or exchanges AS had with Appellant as supporting a reasonable mistake on his part as to her age. Although the evidence was sufficient to warrant the military judge's instruction to the members on the defense of mistake of fact as to age, there was no evidence AS specifically lied to Appellant about her age. Moreover, for the most part, the context and content of the exchanges about marriage, jobs, suspected pregnancy, and AS joining the military to which Appellant refers did not particularly suggest AS was at least 16 years old. Two of the exchanges were potentially more probative. In the fall of 2014, Appellant asked AS via Facebook whether she would be a junior or senior in high school that year, and AS responded that she was "supposed" to be a senior but she had failed too many classes. At trial, AS explained the context for this statement was that she had wanted to graduate early from high school after her junior year, and in that sense she was "supposed" to be a senior. In addition, AS acknowledged on one occasion Appellant asked her to drive to meet him, to which AS responded not that she was too young but that she did not have a car. Nevertheless, considering the weight of the evidence, and recognizing that unlike the court members we did not personally observe the witnesses, we do not find Appellant was honestly and reasonably mistaken as to AS's age. *See Turner*, 25 M.J. at 325.

Having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt of sexual assault beyond a reasonable doubt. Accordingly, we find Appellant's convictions of Charge I and its specifications factually sufficient. *See id.*

### 3. Legal and Factual Sufficiency of Extortion

The military judge instructed the court members on the elements and definitions regarding the Specification of Charge II, the offense of extortion in violation of Article 127, UCMJ, of which Appellant was convicted:

> One, that between on or about 27 October 2013 and on or about 31 December 2014, on divers occasions, within the Commonwealth of Virginia, [Appellant] communicated an intent to publicize an image of [CL] performing oral sex on him;
>
> Two, that the communication was made known to [CL];
>
> Three, that the language used by [Appellant] was a threat, that is, a clear and present intent to injure the reputation of another presently or in the future;

> Four, that such communication was wrongful, and without jus-
> tification or excuse; and
>
> Five, that [Appellant] thereby intended unlawfully to obtain the
> performance of oral sex upon himself, which was an advantage.
>
> . . . .
>
> An intent to obtain any advantage may include an intent to
> make a person do an act against her will

*See* 2012 *MCM*, pt. IV, ¶ 53.b.; *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27–9 at 712–13 (10 Sep. 2014).

Appellant concedes that obtaining the performance of oral sex upon himself constitutes an "advantage" for purposes of Article 127, UCMJ. *See United States v. Hicks*, 24 M.J. 3, 5 (C.M.A. 1987). However, he points to additional language in the *Manual for Courts-Martial* clarifying that "an intent to make a person do an act against that person's will is not, by itself, sufficient to constitute extortion." 2012 *MCM*, pt. IV, ¶ 53.c.(4). Appellant contends the specification in question and the evidence in this case indicate "that [his] alleged extortion involved merely an alleged intent to make CL perform oral sex on Appellant against her will," and is therefore legally insufficient. We disagree.

The specification and evidence together indicate Appellant did not merely intend to have CL do something against her will; he also intended to obtain something of value—that is, CL's performance of oral sex upon him. The CAAF considered similar circumstances and argument in *United States v. Brown*, 67 M.J. 147 (C.A.A.F. 2009). In *Brown*, the appellant used threats to publicize a recording of the victim engaging in sexual acts to try to obtain sexual favors from the victim. *Id.* at 148. The CAAF concluded:

> [I]n addition to alleging that Appellant sought to have [the vic-
> tim] engage in an act against her will, the specification further
> alleged that Appellant intended to obtain an advantage through
> her participation with him in sexual relations. As such, the spec-
> ification did not rely solely, or "by itself," on an allegation that
> Appella[nt] sought to have her engage in an act against her will.

*Id.* at 149. Similarly, in the instant case the specification and evidence demonstrate Appellant intended both to have CL do something against her will *and* to obtain an advantage. Appellant fails to distinguish *Brown* in any meaningful way, and we find the specification legally sufficient.

With regard to factual sufficiency, Appellant contends CL's testimony "reveals that there was no extortion [because] she saw the image, asked Appellant to delete it, and it was never seen again." However, it hardly follows that CL knew Appellant did not have a sexually explicit photo of her that he might

threaten to publicize. To the contrary, CL testified that she asked Appellant to delete the picture and he refused. She further testified that after Appellant joined the Air Force he would "ask for bl[**]jobs and if I said no he would bring up the picture," which he threatened to "post." CL testified she believed Appellant was serious and agreed that "every time that [she] gave him a bl[**]job after he got back from the Air Force . . . he use[d] the picture every time [sic] to sort of make [her] do it." Again, CL's testimony was supported by Facebook messages, such as the exchange from 27 October 2013 quoted above and the following from 26 May 2014 and 14 June 2014:

> [CL:] What c:
>
> [APP:] Oh nothing, just about to post pics to [Facebook]. c:
>
> [CL:] No no no no!
>
> [APP:] I mean you keep blocking me, so I guess it's ok if I block you on that acct then post them, right? xD
>
> [CL:] No please don't
>
> . . . .
>
> [APP:] So about that bj! ;D
>
> [CL:] who said you were gonna get one
>
> [APP:] the pictures on my laptop. [ ]
>
> [CL:] dont you dare start this s[**]t again

CL testified that in addition to the Facebook messages she and Appellant also sent text messages to one another on their phones between October 2013 and May 2014, and there were "a lot more text messages" than Facebook messages. These phone text messages included "inappropriate" conversations. However, due to the lapse of time investigators could not recover these phone texts.

We acknowledge the Specification of Charge II alleges Appellant committed the offense "within the Commonwealth of Virginia." Therefore, Appellant's 27 October 2013 Facebook message, evidently sent while Appellant was in training outside of Virginia, would not itself constitute an act of extortion alleged in the Specification, although it was evidence relevant to both the charged extortion and sexual assault against CL. Similarly, we acknowledge the 26 May 2014 message about "blocking" accounts quoted above, while indicating CL reasonably believed Appellant had embarrassing photos of her, did not refer to Appellant's desire to have any sexual act performed and would also not qualify as an act of extortion as charged. Furthermore, we recognize the court members found Appellant guilty of only a single sexual assault against CL on or about 31 December 2013. However, we find CL's testimony that Appellant used the explicit picture to compel her "every time" she performed oral

14

sex on Appellant after he joined the Air Force, coupled with the 14 June 2014 Facebook message that did refer to oral sex, supported by the other evidence in the case, are sufficient to support Appellant's conviction for extorting CL on "divers occasions"—that is, more than once.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence was legally sufficient to support Appellant's conviction for extorting CL on divers occasions beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction of Charge II and its Specification is therefore both legally and factually sufficient.

### 4. Legal and Factual Sufficiency of Producing Child Pornography

The military judge instructed the court members on the elements and definitions regarding the Specification of Charge III, the offense of production of child pornography in violation of Article 134, UCMJ, of which Appellant was convicted:

> One, that between on or about 1 July 2014 and on or about 8 July 2014, within the Commonwealth of Virginia, [Appellant] knowingly and wrongfully produced child pornography, to wit: a video of a minor engaging in sexually explicit conduct; and

> Two, that under the circumstances, the conduct of [Appellant] was of a nature to bring discredit upon the armed forces.

> . . . .

> "Child pornography" means material that contains a visual depiction of an actual minor engaging in sexually explicit conduct.

> . . . .

> "Sexually explicit conduct" means actual or simulated sexual intercourse or sodomy, including oral-genital, whether between persons of the same or opposite sex.

*See* 2012 *MCM*, pt. IV, ¶ 68b.b.(4), 68b.c.

On appeal, Appellant attacks the legal and factual sufficiency of his conviction for producing child pornography because the Government failed to introduce the alleged video of AS itself or any forensic evidence of it. In the absence of such evidence, Appellant contends AS's testimony is insufficiently credible to prove such a video existed. Furthermore, Appellant argues that without the video itself the evidence "fails to satisfy" the six factors developed in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United*

*States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), adopted by the CAAF and widely employed across the federal circuits for assessing whether a particular image constitutes a "lascivious exhibition" of the genitals or pubic area. *See United States v. Roderick*, 62 M.J. 425, 429–30 (C.A.A.F. 2006).[3] We are not persuaded by Appellant's argument.

We have previously affirmed litigated convictions for child pornography offenses where the Government was unable to introduce the subject images at trial. *See, e.g., United States v. Harrower*, No. ACM 39127, 2018 CCA LEXIS 46, at *10–12 (A.F. Ct. Crim. App. 26 Jan. 2018) (unpub. op.). "[T]he essential question is not whether the Government is able to introduce the sexually explicit images . . . rather, the question is whether the evidence that was introduced establishes each element of the offense beyond a reasonable doubt." *Id*. at *11. In this case, AS's testimony does so. AS testified that on the night of 3–4 July 2014 in Norfolk she saw Appellant record a video of her when she was performing oral sex on him. Appellant showed the video to her. It was approximately ten seconds long; on the video AS saw her face and Appellant's penis inside her mouth. AS was 15 years old at the time and Appellant knew how old she was. We readily conclude such conduct was in fact of a nature to bring discredit upon the armed forces. Thus AS's testimony establishes all of the elements of the offense as described above, including that Appellant created a visual depiction of an actual minor engaged in actual oral-genital sexual intercourse.

We do not find Appellant's challenges to AS's credibility persuasive. Appellant exaggerates the significance and disregards the context of certain instances of AS "lying" or failing to disclose information to Appellant during their relationship. Similarly, the fact that AS did not bring up the oral sex video

---

[3] The *Dost* factors include:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) whether the child is fully or partially clothed, or nude;
>
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Roderick*, 62 M.J. at 429 (citing *Dost*, 636 F. Supp. at 832).

during her initial interview with investigators, and that she originally estimated the video incident occurred on the night of 4 July 2014 rather than the night of 3 July 2014, are more indicative of simple mistakes or temporary memory lapses during the intervening two years than of an intent to deceive. We are unsurprised that the court members were not persuaded by these minor discrepancies; we are not persuaded either.

As for the *Dost* factors, they are inapposite. Appellant's conviction did not depend on a finding of a "lascivious exhibition." The visual depiction of a known minor engaged in actual oral-genital sexual intercourse constitutes child pornography for purposes of Article 134, UCMJ. *See* 2012 *MCM*, pt. IV, ¶ 68b.c. AS's testimony that she saw her face with Appellant's penis in her mouth on the video Appellant made demonstrates the video was in fact child pornography, regardless of an analysis of the *Dost* factors.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," the evidence was legally sufficient to support Appellant's conviction for production of child pornography beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction of Charge III and its Specification is therefore both legally and factually sufficient.

## C. Major or Minor Change to Specification

### 1. Additional Background

At the time Appellant was arraigned the Specification of Charge II, alleging extortion in violation of Article 127, UCMJ, read as follows:

> In that [Appellant] . . . did, within the Commonwealth of Virginia, between on or about 2 August 2014 and on or about 31 December 2014, on divers occasions, with intent unlawfully to obtain an advantage, to wit, the performance of oral sex upon [Appellant], communicate to [CL] a threat to publicize an image of [CL] performing oral sex on him.

As described above, at trial CL testified that at some point after Appellant joined the Air Force in August 2013 he resumed pressuring her to perform oral sex by referring to the picture of her performing oral sex that he had previously taken. CL testified that as a result she subsequently performed oral sex on Appellant approximately five times. CL testified these sexual encounters ended after New Year's Day of 2014 when Appellant "just stopped talking to [her] about bl[**]jobs and stuff." The Government also introduced a number of Facebook messages between Appellant and CL, including exchanges from 27

October 2013 and 14 June 2014—quoted above in our discussion of factual sufficiency—apparently referring to Appellant's ability to pressure CL to perform oral sex. However, the Government introduced only one relatively brief text exchange from within the originally-charged time frame commencing on or about 2 August 2014; dated 18 September 2014, this exchange did not refer to oral sex or to any image of CL.

After the Government rested its case on findings, trial counsel moved to make a "minor change" to the Specification of Charge II pursuant to Rule for Courts-Martial (R.C.M.) 603(c). Trial counsel explained that "evidence at trial has reflected that the start date of the timeframe of this offense should date back to 27 October 2013 to encompass the divers language as charged." The Defense objected. Civilian defense counsel argued that the Defense had inadequate notice of the proposed change. In addition, he argued the change was "highly prejudicial" because it extended the time frame to points in time when CL was under 16 years old, which made the offense "more serious." Civilian defense counsel also argued the change to the extortion specification aggravated the charged sexual assault against CL between on or about 20 August 2013 and on or about 20 June 2014 because it indicated CL was not only underage but non-consenting.

In an oral ruling the military judge permitted the Government to amend the specification by replacing the date "2 August 2014" with the date "27 October 2013," as requested. The military judge groused that "this is a poorly charged case" and that she did not like "the timing;" however, she found "the case law allows for changes to the charge sheet, even up through findings being announced." She further found the requested change "doesn't result in an additional or different offense" and did not "prejudice [Appellant's] substantial rights." Furthermore, she relied on *United States v. Whitt*, 21 M.J. 658 (A.C.M.R. 1985), *rev. denied*, 22 M.J. 357 (C.M.A. 1986), cited by the Government, for the proposition that "this length of time, which is just under a year that the trial counsel wants to back up this charged timeframe, that's perfectly acceptable under the case law."[4] The court members convicted Appellant of the modified specification.

**2. Law**

"Whether a change made to a specification is minor is a matter of statutory interpretation and is reviewed de novo." *United States v. Reese*, 76 M.J. 297,

---

[4] The court in *Whitt* found "the change of the date by one year [was] not a major change resulting in a new offense," although the change did implicate the statute of limitations which required the finding of guilty to be set aside. 21 M.J. at 661–62.

300 (C.A.A.F. 2017) (citing *United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016)).

"Minor changes in charges and specifications are any except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." R.C.M. 603(a). "After arraignment the military judge may, upon motion, permit minor changes in the charges and specifications at any time before findings are announced if no substantial right of the accused is prejudiced." R.C.M. 603(c). Major changes "may not be made over the objection of the accused unless the charge or specification affected is preferred anew," regardless of any demonstration of prejudice. R.C.M. 603(d); *see Reese*, 76 M.J. at 301–02.

### 3. Analysis

Appellant contends the military judge erroneously permitted the Government to make a major change to the Specification of Charge II by expanding the charged time frame from "between on or about 2 August 2014 and on or about 31 December 2014" to "between on or about 27 October 2013 and on or about 31 December 2014" over the Defense's objection. We echo the military judge's opinion that the case was "poorly charged" in this respect and we find the events at trial betray the Prosecution's lack of familiarity with its case. Nevertheless, we are not persuaded the military judge erred by permitting the change.

The military judge may permit minor changes in a specification "*at any time before findings are announced,*" provided that "no substantial right of the accused is prejudiced." R.C.M. 603(c) (emphasis added). Therefore, we must resolve whether the change was minor, and if so, whether it nevertheless prejudiced Appellant's substantial rights. The rule establishes a presumption that a change is minor unless it "add[s] a party, offenses, or substantial matter not fairly included in those previously preferred" or is "likely to mislead the accused as to the offenses charged." R.C.M. 603(a). The change at issue did not "add a party" or modify any language with respect to the location or nature of the alleged criminal acts. The only change was to the initial date of the charged time period. A change in the alleged date of an offense is not necessarily a major change. *See United States v. Brown*, 34 M.J. 105, 110 (C.M.A. 1992), *overruled on other grounds by Reese*, 76 M.J. at 302 ("[T]he date of the alleged [offense] was not offense-defining and could properly be considered minor . . . ."); *Whitt*, 21 M.J. at 661 ("We find that the change of date [of the alleged offense] by one year is not a major change . . . ."); *cf. United States v. Parker*, 59 M.J. 195, 197 (C.A.A.F. 2003) ("Changing the date or place of the offense [by exceptions and substitutions] may, but does not necessarily, change the nature or identity of the offense." (quoting R.C.M. 918(a)(1), Discussion)). A change in

the alleged date *may* be a major change in a particular case if the date is "offense-defining" or if time is somehow "of the essence" with respect to the offense. *Brown*, 34 M.J. at 110 (citations omitted); *see United States v. Wray*, 17 M.J. 375, 376 (C.M.A. 1984) (finding a fatal variance where appellant was charged on the theory of larceny by taking on one date but found guilty of larceny by withholding on a later date). However, in Appellant's case the date change did not affect the nature of the offense, only the time frame in which it occurred.

We have considered whether the fact that Appellant was charged with extorting CL "on divers occasions" gave the expansion of the date range the effect of adding "offenses" to the specification. *See United States v. Stout*, ARMY 20120592, 2018 CCA LEXIS 174, at *14 (A. Ct. Crim. App. 9 Apr. 2018) (unpub. op.), *rev. granted*, 78 M.J. 93 (C.A.A.F. 2018) ("[S]ince the specifications did not include 'on divers occasions' language, no additional offenses were alleged by the changes in the date range for the specifications.") Notwithstanding the implications of our sister court's analysis in *Stout*, we find the change did not add "offenses." First, we note that our predecessor court previously found no abuse of discretion where a trial judge permitted the expansion of the time frame of offenses alleged on divers occasions over defense objection—implying the expansion was a minor change rather than a major change. *See United States v. Hartzog*, No. ACM 29055, 1992 CMR LEXIS 794, at *8–10 (A.F.C.M.R. 9 Nov. 1992) (unpub. op.). In addition, the charging of an offense on divers occasions over a number of months is inherently facially ambiguous as to the exact number and dates of the criminal acts. Expanding the date range did not "add an offense" or necessarily increase the number of criminal acts the Government sought to prove; rather, it was the same alleged offense applied to a different time period. In this case, the date was not "offense-defining." *See Brown*, 34 M.J. at 110 (citation omitted); *United States v. Brown*, 16 C.M.R. 257, 261 (C.M.A. 1954) (citing alleged violations of a "Sunday 'blue law'" or statutory rape as cases where the date may be "of the essence of the crime"). Although a change to the alleged date may "add an offense" in some circumstances, in this case we find it did not.

Nevertheless, although the parties, offense, and substance of the specification remained the same, the change would still be a major one if it was "likely to mislead the accused as to the offenses charged." R.C.M. 603(a). At trial the Defense contended Appellant was prejudiced by surprise and the lack of notice of the change. Although we agree the Prosecution could and should have requested the change sooner, and the military judge might have refused to permit the requested change, we are not persuaded the change surprised or misled the Defense in a manner that appreciably harmed Appellant's ability to defend the case. In opposing the proposed change civilian defense counsel referred to a "notice problem" but did not articulate any specific way in which the Defense

had been prejudiced with regard to the presentation of evidence. On appeal, Appellant fails to articulate what the Defense did or failed to do at trial as a result of being misled by the change. The Defense did not request to recall CL or any witness for additional cross-examination, or for a delay in order to further prepare its case on findings. During the presentation of evidence trial defense counsel demonstrated their familiarity with the substance of the messages between Appellant and CL spanning the modified charged time frame. Furthermore, the evidence relevant to the expanded time frame for the extortion of CL was already admissible and a matter of litigation by the parties due to its relevance to the charged sexual assault against CL. Accordingly, under the circumstances we do not find the change was "likely to mislead" Appellant with regard to what he had to defend against.

Having concluded the change was not "major," we must next determine whether the minor change nevertheless prejudiced Appellant's substantial rights and was therefore prohibited by R.C.M. 603(c). We find it did not. For the reasons stated above, we find Appellant had adequate notice to defend against the modified charge. Moreover, his punitive exposure was not increased. We are not persuaded by civilian defense counsel's arguments that the modification effectively aggravated either the charged extortion or sexual assault against CL. The same evidence was admissible regardless of the change, the nature of the offenses was not altered, and the modification had no impact on the maximum potential punishment. Accordingly, we find the military judge did not err by permitting the minor change to the Specification of Charge II.

## D. Trial Counsel's Closing Argument

### 1. Additional Background

During findings argument, civilian defense counsel suggested that Appellant did not know AS's true age because, *inter alia*, they were not in the same "peer group" or "age group." During rebuttal, trial counsel attempted to counter this argument by referring to a Facebook message Appellant had sent stating that he "like[d] f[**]king with freshman [sic]." Trial counsel's argument drew an objection from civilian defense counsel that trial counsel had mischaracterized the evidence because the message in question was sent to CL rather than to AS. Trial counsel acknowledged it was a message to CL. The military judge sustained the objection.

After trial counsel's rebuttal argument, civilian defense counsel requested surrebuttal on this portion of the argument. Civilian defense counsel contended to the military judge that trial counsel had "so far mischaracterized" the evidence that it "thoroughly confus[ed]" the Defense's distinct arguments with respect to CL and AS, and that trial counsel had done so "on purpose." The military judge granted civilian defense counsel's request for surrebuttal

argument to be followed by an opportunity for additional rebuttal argument by trial counsel. During surrebuttal, civilian defense counsel argued trial counsel erroneously used evidence of a message between Appellant and CL to argue Appellant did not have a reasonable mistake of fact as to AS's age.

Trial counsel then made the following additional rebuttal argument:

> I apologize that I said [CL]--or I'm sorry [AS] instead of [CL]. What I was rebutting was what the defense counsel said that [AS] and [her] peer group was not the same peer group as [Appellant]. And you have in [CL]'s text messages where he says, "I like f[**]king with freshman [sic]." That is what [AS] was when he met her, that is what [CL] was when he met her. *Don't fall for smoke and mirrors.*

(Emphasis added). The Defense did not object to trial counsel's additional rebuttal argument.

### 2. Law

Improper argument is a question of law that we review de novo. *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (citation omitted). When there is no objection at trial, we review the propriety of trial counsel's argument for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citation omitted). To prevail under a plain error analysis, Appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Erickson*, 65 M.J. at 223 (citations omitted).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *Frey*, 73 M.J. at 248 (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). "[I]t is . . . improper for a trial counsel to attempt to win favor with the members by maligning defense counsel." *United States v. Fletcher*, 62 M.J. 175, 181 (C.A.A.F. 2005) (citations omitted). "A prosecutorial comment must be examined in light of its context within the entire court-martial." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted). In assessing prejudice from improper findings argument, we balance three factors: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction. *Fletcher*, 62 M.J. at 184. "In other words, prosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.*

### 3. Analysis

Appellant contends that trial counsel's advice to the court members not to "fall for smoke and mirrors" was an inappropriate disparagement of civilian defense counsel. Appellant argues the military judge's failure to intervene *sua sponte* to this "improper crescendo" of trial counsel's argument constituted plain error that was not harmless. We disagree.

We have previously found that a trial counsel's employment of the "smoke and mirrors" metaphor in reference to defense arguments is not inevitably prosecutorial misconduct. *See, e.g., United States v. Condon*, No. ACM 38765, 2017 CCA LEXIS 187, at *47–51 (A.F. Ct. Crim. App. 10 Mar. 2017) (unpub. op.), *aff'd*, 77 M.J. 244 (C.A.A.F. 2018) (finding trial counsel's reference to smoke and mirrors was an attempt to "highlight the weaknesses in the Defense's arguments" rather than a personal attack on counsel). Similarly, viewed in context, in this case trial counsel's reference to "smoke and mirrors" addressed the perceived weakness of civilian defense counsel's argument on the narrow point that had become the focus of the surrebuttal and additional rebuttal arguments, rather than accusing the Defense of fabrication or dishonesty. We do not find a "plain or obvious" error that required the military judge to intervene in the absence of an objection. *See Erickson*, 65 M.J. at 223.

Assuming *arguendo* the comment was improper, we find Appellant was not prejudiced by it. First and foremost, we find the severity of the misconduct was minimal. The phrase was a fleeting comment at the very end of an unplanned additional rebuttal rather than a theme of trial counsel's argument. The subject of the surrebuttal and additional rebuttal was not any supposed impropriety on the Defense's part, but an assertedly mistaken reference during trial counsel's rebuttal argument to which the military judge sustained an objection and for which trial counsel accepted responsibility. The "smoke and mirrors" comment went to the reasoning behind civilian defense counsel's argument rather than to his conduct or character. It is true that the military judge did not implement corrective measures *sua sponte*, but she did provide the court members standard findings instructions that "the arguments of counsel are not evidence," and the members "must base the determination of the issues in the case on the evidence as [they] remember it and apply the law as [the military judge] instruct[s] them." Finally, the evidence supporting Appellant's convictions for offenses against AS was solid as described above in our analysis of factual sufficiency. Considering all factors together, we conclude that any error by the military judge was not "so damaging that we cannot be confident" that the members convicted Appellant "on the basis of the evidence alone." *Fletcher*, 62 M.J. at 184.

**E. Sentence Appropriateness**

**1. Law**

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2016). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (alteration in original) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

**2. Analysis**

Appellant asserts his punishment—and in particular his sentence to 12 years in confinement—is inappropriately severe. He notes that he was a teenager himself when he met CL and AS, who he asserts were his "social and scholastic peers." Appellant contends trial counsel's sentencing argument exaggerated his criminality and that Appellant's good military record and character letters on his behalf weigh in his favor. Appellant argues we should approve no more than three years in confinement.

Although Appellant's sentence is heavy, we cannot say it is unjust as a matter of law. Appellant was convicted of serious sexual offenses against children. At the time of the offenses Appellant was a 19- and 20-year-old Airman who knew the illegality of his actions.[5] He faced a maximum punishment that included, *inter alia*, confinement for 153 years. Furthermore, Appellant's comments and messages to AS and particularly to CL suggest a lack of remorse for his actions that appears to have resonated with the court members. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we cannot say the court members imposed an inappropriately severe sentence.

---

[5] On 27 October 2013—the same day he told CL she would be "back s[**]king [him] off for Xmas"—Appellant informed CL he knew from his Air Force training that it was a crime to have sex with anyone under the age of 16 years.

**F. Post-Trial Errors**

**1. Additional Background**

After trial, the acting staff judge advocate for the convening authority prepared a staff judge advocate's recommendation (SJAR) dated 31 August 2017 which provided, *inter alia*, the following advice:

> For Charge II, and its specification [alleging extortion of CL], you have the authority to approve or disapprove the finding of guilt as that offense occurred prior to 24 June 2014. For the remaining findings of guilt, you only have the authority to approve the findings of guilt and cannot dismiss the findings of guilt.
>
> . . . .
>
> As the convening authority, you do not have the authority to disapprove, commute, or suspend in whole or in part the punitive discharge or the confinement. You do have the authority to disapprove, commute or suspend in whole or in part the reduction in rank or the forfeitures. . . . I recommend you approve the sentence as adjudged.

Pursuant to R.C.M. 1105, trial defense counsel submitted a memorandum dated 18 September 2017 with a number of attachments on Appellant's behalf for the convening authority's consideration before taking action on the court-martial. Trial defense counsel failed to object to or correct any erroneous advice in the SJAR. To the contrary, trial defense counsel stated, *inter alia*:

> [W]e ask that [Appellant's] confinement be reduced. It is understood that under the [National Defense Authorization Act] regulations [sic] from the last few years that at this time you may not be able to act on this request . . . .
>
> We ask that should it become possible, or if a higher authority has the ability, that leniency be shown by reducing [Appellant's] confinement.

Appellant did not personally submit a clemency request or statement to the convening authority.

The staff judge advocate's addendum to the SJAR dated 22 September 2017 failed to address any errors in the SJAR or the clemency submission and it advised that the "earlier recommendation remains unchanged." The convening authority approved the findings and the adjudged punishment.

**2. Law**

"The proper completion of post-trial processing is a question of law the court reviews de novo." *United States v. Zegarrundo*, 77 M.J. 612, 613 (A.F. Ct. Crim.

App. 2018) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in or attached to the SJAR forfeits a later claim of error; we analyze such forfeited claims for plain error. *Id.* (citations omitted). "To prevail under a plain error analysis, Appellant must persuade this Court that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65) (additional citation omitted). "To meet this burden in the context of a [SJAR] error, whether that error is preserved or is otherwise considered under the plain error doctrine, an appellant must make 'some colorable showing of possible prejudice.'" *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65).

The National Defense Authorization Act (NDAA) for Fiscal Year 2014 modified Article 60, UCMJ, 10 U.S.C. § 860, and limited the convening authority's ability to grant clemency. Pub. L. No. 113–66, § 1702, 127 Stat. 672, 955–58 (2013). The effective date of the change was 24 June 2014. *Id.* at 958. The modified Article 60, UCMJ, now permits the convening authority to set aside or change a finding of guilty only with respect to "qualifying offenses," specifically offenses for which the maximum imposable term of confinement does not exceed two years and where the sentence adjudged does not include a punitive discharge or confinement for more than six months.[6] 10 U.S.C. § 860(c)(3)(B), (D) (2016). With respect to sentences, the pertinent text of the modified Article 60, UCMJ, now reads: "[T]he convening authority or another person authorized to act under this section may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge." 10 U.S.C. § 860(c)(4)(A) (2016).

However, where a court-martial conviction involves an offense committed before 24 June 2014 *and* an offense committed on or after 24 June 2014, the convening authority has the same authority under Article 60 as was in effect before 24 June 2014, except with respect to a mandatory minimum sentence under Article 56(b), UCMJ, 10 U.S.C. § 856(b). Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113–291, § 531, 128 Stat. 3292, 3365 (2014). Specifically, in such cases the convening authority retains the authority to set aside any finding of guilty or to change it to a finding of guilty to a lesser included offense, to disapprove or mitigate the sentence in whole or in part, or to change a punishment to one of a different nature so long as the severity is not increased. Exec. Order 13,730, 81 Fed. Reg. 33,331 (26 May 2016).

---

[6] Offenses under Articles 120, 120b, and 125, UCMJ, are specifically excepted from the term "qualifying offense." 10 U.S.C. § 860(c)(3)(D)(ii) (2016).

### 3. Analysis

The legal advice in the SJAR provided to the convening authority was plainly erroneous. The dates of five of the six specifications of which Appellant was convicted "straddle" 24 June 2014, the effective date of the changes to Article 60, UCMJ, that curtailed the convening authority's power to grant relief with respect to the findings and sentence of a court-martial. Therefore, contrary to the SJAR, the convening authority in this case had the power to set aside any of the findings of guilty and the power to disapprove, mitigate, or modify the sentence in whole or in part. The acting staff judge advocate's advice in the SJAR that the convening authority could disapprove the finding on only one specification and could not modify the adjudged confinement, uncorrected and repeated by the staff judge advocate in the addendum, was simply wrong.

A related but distinct error was the staff judge advocate's failure to address trial defense counsel's evident misunderstanding of the convening authority's clemency authority. Trial defense counsel effectively conceded the erroneous advice in the SJAR that the recent changes to Article 60, UCMJ, did not allow the convening authority to grant the reduction in confinement the Defense sought. In *Zegarrundo*, we found that a staff judge advocate's failure to correct a defense counsel's erroneous advice in a clemency submission that the convening authority lacked the power to disapprove confinement—even where the SJAR itself contained correct advice—was plain error. 77 M.J. at 614; *see United States v. Addison*, 75 M.J. 405 (C.A.A.F. 2018) (mem.). This case presents a similar situation. The fact that in this case the SJAR itself provided incorrect advice perhaps makes the failure to correct the clemency submission more predictable, but no less erroneous.

The Government attempts to distinguish Appellant's situation from *Zegarrundo* on the basis that, notwithstanding the failure of the staff judge advocate and the Defense to correctly advise the convening authority, trial defense counsel nevertheless "still requested that the convening authority reduce the adjudged term of confinement" which was a request "the convening authority could actually grant." We are not persuaded. Given trial defense counsel's acquiescence to the advice in the SJAR, his request that Appellant's confinement "be reduced" had the effect of making a desire known to "higher authority" or in the event there was an unexpected change in the law. It was far less than an assertion that the convening authority could and should grant confinement relief. Therefore, the same concerns with the sufficiency of the clemency submissions in *Zegarrundo* and *Addison* are present here.

The Government further contends that Appellant was not prejudiced by these errors because in light of his service record, the basis for his clemency

request, and the number and severity of his convictions, the convening authority simply would not have granted relief. Again, we are not persuaded. Appellant's sentence was not inappropriately severe, but it was heavy—particularly the 12-year term of confinement which was the focus of his clemency submission.[7] The SJAR advised the convening authority that he had no authority to grant the exact relief the Defense sought. In addition, in response to the issues specified by this court, Appellant has submitted a declaration stating that but for trial defense counsel's inaccurate advice to him that the convening authority could not set aside his convictions or reduce his confinement, Appellant would have written a letter to the convening authority and solicited letters on his behalf from his friends and family. Appellant also submitted a declaration from his mother stating that she had also been unaware of the convening authority's ability to grant clemency and listing a number of Appellant's family members and friends who would submit letters on his behalf. Under these circumstances, we find Appellant has made a more than adequate colorable showing of possible prejudice from the post-trial errors in his case. Accordingly, a new post-trial process and convening authority action are required.

### III. CONCLUSION

The action of the convening authority is set aside. The record of trial is returned to The Judge Advocate General for remand to the convening authority for new post-trial processing with conflict-free defense counsel consistent with this opinion. Article 66(e), UCMJ, 10 U.S.C. § 866(e) (2016). Thereafter, the record of trial will be returned to this court for completion of appellate review under Article 66, UCMJ.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[7] The court members adjudged the exact sentence trial counsel recommended during sentencing argument.